CECILIO RODRIGUEZ and HENRY KAAIHUE, aka "Cecilio and Kapono"; KEOLA BEAMER and KAPONO BEAMER, aka "The Beamer Brothers"; DICK JENSEN, aka "Giant"; NEPHI HANNEMAN, aka "Polynesian Man"; NINA KEALIIWAHAMANA; JIMMY BORGES; SONNY CHILLINGSWORTH; FRANK DeLIMA; DON HO; ALLEN NALUAI, CLAYTON NALUAI, PAT SYLVA and JOSEPH STEVENS, aka "The Surfers"; JAMES DANIEL "Bla" PAHINUI; ED KAAHEA; HENRY "Skippy" KAMAKAWIOOL'E, ISRAEL KAMAKAWIOOL'E, LOUIS "Moon" KAUAKAHI, and MELVIN AMINA, aka "The Makaha Sons of Niihau," Plaintiffs-Appellees, *v.* WAYNE NISHIKI; WAYNE NISHIKI dba COMMITTEE TO ELECT WAYNE NISHIKI LT. GOVERNOR; VALLEY ISLE PUBLISHERS, a Partnership and JAMES LESLIE MOORE, RICK REED and GEOFFREY SILVA, as partners therein; and VALLEY ISLE PUBLISHERS, INC., a purported Hawaii corporation, Defendants-Appellants

NO. 7956

(CIVIL NO. 55856)

NOVEMBER 10, 1982

RICHARDSON, C.J., LUM, NAKAMURA, HAYASHI, JJ., AND RETIRED JUSTICE MENOR, ASSIGNED TEMPORARILY, IN PLACE OF PADGETT, J., DISQUALIFIED

## OPINION OF THE COURT BY LUM, J.

Defendants-appellants appeal from the summary judgment entered in favor of plaintiffs-appellees, who brought this defamation action for statements made by appellants Wayne Nishiki and Rick Reed in the 1978 election campaign. From the evidence presented in the record, we find there are genuine issues of material fact. We accordingly reverse in part, affirm in part, and remand this case for trial.

### I.

During the 1978 election campaign, *The Valley Isle*, a biweekly newspaper published by defendant-appellant Valley Isle Publishers, Inc., ran an article written by defendant-appellant Rick Reed entitled "Link Between Crime Leader and Government is the Key." *The Valley Isle*, Issue 31, Sept. 19 - Oct. 3, 1978, at 2, col. 1. The

subject of the article was the recently released report of the Hawaii Crime Commission concerning the connection between organized crime and legitimate society in Hawaii. Hawaii Crime Commission, 1 *Organized Crime in Hawaii* (August 1978). In addition to quoting excerpts from the Crime Commission report, the article stated in part as follows:

The report points out that organized crime has "linkages" with high political, social and *entertainment* circles. An oft-used axiom in Hawaii is, "If you want to know which candidate is backed by organized crime, watch to see who the big-name musicians perform for."

On September 24th at Aloha Stadium, an Ariyoshi fund-raising rally will feature music by Don Ho, Cecilio and Kapono, Dick Jensen, Nephi Hanneman, Clay and Al Naluai and the Surfers, Keola and Kapono Beamer, Jimmy Borges, Country Living, Sonny Chillingsworth, Frank DeLima and Na Kolohe, Bobby Enriques, Al Harrington, Ed Kaahea, Danny Kaleikini, Nina Keliiwahamana, Al Lopaka, Cyril Pahinui's Sandwich Isle Band, Yvonne Elliman, Ledward Kaapana and Naleo, Moe Keale and Anuenue, Iva Kinimaka, Blah Pahinui and many more.

(Emphasis in original).

On September 25, 1978, defendant-appellant Wayne Nishiki, a candidate for lieutenant governor, made the following statement to a group of Chaminade University students, which was videotaped and aired by television station KITV on or about the same date:

Recently, last night in fact, Governor George Ariyoshi had a gathering at the Aloha Stadium. And you saw all the top-named entertainers there and yet, why would none of these entertainers play for Frank Fasi? Also, there is a statement made regarding this. That if you look at where the top names of entertainment are playing, this is where organized crime has a foothold because they do have a grasp on the entertainment business itself.[1]

---

[1] At his deposition taken on February 6, 1980, appellant Wayne Nishiki testified that he had no independent recollection of making the statement, which was transcribed by appellees' counsel Judith Ann Pavey from a videotape made of the KITV broadcast of excerpts from Nishiki's Chaminade University speech. However, at the hearing on appellants' motion for summary judgment, appellants' counsel conceded for the purposes of the motion that Nishiki made these remarks.

Several of the local entertainers named in the *Valley Isle* article instituted a defamation action on October 3, 1978 against defendants-appellants Rick Reed, Wayne Nishiki, and Valley Isle Publishers, Inc., as well as defendants-appellants James Leslie Moore and Geoffrey Silva, in their capacity as shareholders and directors of Valley Isle Publishers, Inc.[2]

The named plaintiffs-appellees in the original complaint were as follows: Cecilio Rodriguez and Henry Kaaihue, aka "Cecilio and Kapono;" Keola Beamer and Kapono Beamer, aka "The Beamer Brothers;" Dick Jensen, aka "Giant;" Nephi Hanneman, aka "Polynesian Man;" Nina Keliiwahamana; Jimmy Borges; Sonny Chillingsworth; Frank DeLima; Don Ho; Allen Naluai, Clayton Naluai, Pat Sylva and Joseph Stevens, aka "The Surfers;" James Daniel "Bla" Pahinui and Ed Kaahea. Plaintiffs alleged that the *Valley Isle* article and Wayne Nishiki's statement to the Chaminade University students implied that they were connected with or controlled by organized crime because of their participation in Governor Ariyoshi's political fund-raising rally.

By amended complaint filed on October 25, 1978, Henry "Skippy" Kamakawiool'e, Israel Kamakawiool'e, Louis "Moon" Kauakahi and Melvin Amina, aka "The Makaha Sons of Niihau," were joined as additional plaintiffs. Although not explicitly mentioned in the article by Rick Reed, additional plaintiffs contended that they were equally defamed by the article and Wayne Nishiki's statement because they also played at Governor Ariyoshi's political rally.

Defendants-appellants filed a motion for summary judgment on April 7, 1980. Appellants contended that appellees failed to produce clear and convincing evidence that (1) the alleged defamatory statements were false and (2) appellants had published the statements with actual malice. In addition, appellants James Leslie Moore and Geoffrey Silva submitted affidavits stating that they had never participated in the business activities of Valley Isle Publishers, Inc. and

---

[2] The articles of incorporation of Valley Isle Publishers, Inc. were filed on June 13, 1977 with the Department of Regulatory Agencies of the State of Hawaii. Appellants Rick Reed, Geoffrey Silva and Leslie Moore were listed as directors of the corporation. Rick Reed was designated as its president and Geoffrey Silva, its secretary-treasurer.

they had no knowledge whatsoever of any of the material facts asserted in appellees' complaint.

On May 2, 1980, plaintiffs-appellees filed their motion for summary judgment. Attached to appellees' motion was an affidavit by appellees' counsel Judith Ann Pavey in which she stated that

> I have personally spoken with each of the Plaintiffs in this case, all of whom have stated that the charges made by Wayne Nishiki and the remaining Defendants that the Plaintiffs are controlled by organized crime are false.[3]

Record at 112.

On May 13, 1980, the trial court held a hearing on the motions for summary judgment filed by the respective parties. At the hearing, appellees conceded for the purposes of their motion for summary judgment that they were public figures and as such were required to prove actual malice on the part of the appellants in making the alleged defamatory statements. From the evidence presented in the record, the court found that the publications at issue constituted libel per se and that the publications were made with reckless disregard for the truth or falsity therein. By written order filed on May 21, 1980, the court denied appellants' motion for summary judgment and granted appellees' motion for summary judgment.

Defendants-appellants appeal the trial court's order, contending that the trial court erred in granting appellees' motion for summary judgment because there was no clear and convincing evidence in the record of appellants' actual malice. Appellants also contend that the trial court erred in denying their motions for summary judgment, especially with regard to appellants Silva and Moore, who did not participate, either actively or passively, in the making of the alleged defamatory statements.

---

[3] Appellees' counsel David C. Schutter concedes on appeal that Ms. Pavey's affidavit was insufficient to be considered as evidence in a motion for summary judgment because it was based on hearsay in violation of HRCP Rule 56(e), which states in relevant part that

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

See also Cahill v. Hawaiian Paradise Park Corp., 56 Haw. 522, 539, 543 P.2d 1356, 1367 (1975).

## I.

At the outset we note that appellees on appeal have conceded that the trial court erred in denying appellants' motion for summary judgment with regard to appellants Silva and Moore.

In *Cahill v. Hawaiian Paradise Park Corp., supra* at 526, 543 P.2d at 1360 (1975), we held that

> The law is firmly established that officers, directors or share-holders of a corporation are not personally liable for the tortious conduct of the corporation or its other agents, unless there can be found some active or passive participation in such wrongful conduct by such persons.

We affirmed in *Cahill* the grant of summary judgment in favor of an individual defendant who was sued solely in his status as a share-holder and president of a defendant corporation in a defamation action. *See also Runnels v. Okamoto,* 56 Haw. 1, 3, 525 P.2d 1125, 1127-28 (1974).

As in *Cahill,* there is no evidence in the record in the instant case from which a finding could be made that appellants Silva and Moore participated in the publication of the statements at issue. In their affidavits, Silva and Moore stated that the extent of their involvement with appellant Valley Isle Publishers, Inc. consisted of lending their names to the articles of incorporation of Valley Isle Publishers, Inc. as a favor to their friend Rick Reed and contributing $300.00 each to the paid-in-capital of the corporation. Silva and Moore further stated in their affidavits that they were unaware that *The Valley Isle* had published the article complained of until some time after it was printed. Record at 101-04. Appellants produced no evidence to the contrary.

Accordingly, we reverse the trial court's denial of appellants' motion for summary judgment with regard to appellants Geoffrey Silva and James Leslie Moore and hereby dismiss them from this action.

## II.

The standard of liability applicable to remaining appellants Rick Reed, Wayne Nishiki, and Valley Isle Publishers, Inc. is predicated upon appellees' status as public figures.

In its landmark decision in *New York Times v. Sullivan,* 376 U.S. 254 (1964), the U.S. Supreme Court held that the first amendment guarantees of freedom of speech and freedom of the press impose a higher standard of proof in defamation actions brought by public officials. Under the standard of "actual malice" established by the Court, public officials must prove that the publisher of the defamatory statement acted with knowledge of its falsity or reckless disregard of the truth. *Id.* at 279-80. The Court in *Curtis Publishing Co. v. Butts,* 388 U.S. 130 (1967), *reh. denied,* 389 U.S. 889 (1967), later expanded the *New York Times* standard of actual malice to include defamation actions brought by public figures.

After reviewing the *New York Times* decision and its progeny, we defined "actual malice" in *Tagawa v. Maui Publishing Co. (Tagawa II),* 50 Haw. 648, 652, 448 P.2d 337, 340, *cert. denied,* 396 U.S. 822 (1968) as

> "deliberate falsification" of facts or "reckless disregard" of the truth, *i.e.,* reckless publication despite a high degree of awareness, harbored by the publisher, of the probable falsity of the published statements.

Since appellees in the instant action have conceded that they are public figures, the question we must next address is whether the *New York Times* standard of actual malice is applicable to all remaining appellants in this action or only to media defendants Rick Reed and Valley Isle Publishers, Inc.

Although at one time there was some dispute about whether the actual malice standard of liability would only be applicable to media defendants, it is now generally recognized, at least with regard to defamation actions involving public officials and public figures, that the *New York Times* standard of actual malice is applicable to both media and nonmedia defendants. *See Restatement (Second) of Torts* § 580A, comment h (1976). *See also Avins v. White,* 627 F.2d 637, 649 (3d Cir. 1980), *cert. denied,* 449 U.S. 982 (1980); *Davis v. Schuchat,* 510 F.2d 731, 734 n.3 (D.C. Cir. 1975); *Woy v. Turner,* 533 F. Supp. 102 (N.D. Ga. 1981); *Antwerp Diamond Exchange v. Better Business Bureau,* 130 Ariz. 523, 637 P.2d 733 (1981); *Jacron Sales Co. Inc. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976).

The equal treatment of mass media and individual defendants stems from the first amendment's equal guarantees of freedom of speech and freedom of the press. The denial of the constitutional

protection of the *New York Times* standard to nonmedia defendants would result in the anomalous situation where media defendants, with a greater capacity for damaging an individual's reputation because of their wide dissemination of information, would be accorded greater rights than other speakers in society. The U.S. Supreme Court itself, while not articulating a standard explicitly applicable to nonmedia defendants, has made no distinction between media and nonmedia defendants and has further abandoned the traditional dichotomy between libel and slander actions. *See e.g., St. Amant v. Thompson,* 390 U.S. 727 (1968) (televised speech); *Garrison v. Louisiana,* 379 U.S. 64 (1964) (press conference); *New York Times v. Sullivan, supra* (editorial advertisement).

Upon review of these cases, we adopt the prevailing view that the "actual malice" standard in defamation actions brought by public officials and public figures should be applied without regard to the publisher's designation as a "media" or "nonmedia" defendant.

The same standard of liability thus applies equally to all three remaining appellants in this defamation action. Appellant Wayne Nishiki, a nonmedia defendant whose alleged defamatory statement technically constitutes slander instead of libel, is entitled to the same constitutional protections accorded to media defendants Rick Reed and Valley Isle Publishers, Inc. under the standard articulated in *New York Times* and *Curtis Publishing Co.*

### III.

The trial court applied the actual malice standard of *New York Times* to all appellants in the instant action and found as a matter of law that (1) the publications at issue were libelous per se and (2) that the publications were made with reckless disregard for the truth or falsity therein. The record upon which the court made its findings consisted of exhibits attached to the parties' motions for summary judgment as evidence of the statements complained of and the sources on which they were based, the affidavits filed by appellants, and a deposition taken of Wayne Nishiki on February 6, 1980.[4] On

---

[4] We will assume for the purposes of appellate review that the trial court did not base its findings on Ms. Pavey's affidavit which was incompetent evidence under HRCP Rule 56(e). *See* n.3, *supra. See also* Associated Engineers & Contractors, Inc. v.

the basis of the record presented, the trial court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment.

It is now well recognized that public officials and public figures who bring defamation actions must meet a high standard of proof with regard to the "actual malice" issue. In *New York Times v. Sullivan*, 376 U.S. at 285-86, the U.S. Supreme Court held that plaintiffs in such defamation actions must prove defendants' actual malice with "the convincing clarity which the constitutional standard demands." The Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974), later restated the standard of proof as follows:

> Those who, by reason of the notoriety of their achievements or by the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office may recover for injury to reputation only on *clear and convincing proof* that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth.

(emphasis added).

The problem that some courts have faced is how this "clear and convincing proof" standard should be applied at the summary judgment level. Ordinarily, summary judgment should only be granted in cases where the record reveals that there is no genuine issue as to any material fact. The moving party carries the burden of showing that he is entitled to a judgment as a matter of law. HRCP Rule 56(c). *See Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 611, 607 P.2d 1304, 1308 (1980); *Miller v. First Hawaiian Bank*, 61 Haw. 346, 349, 604 P.2d 39, 41 (1979); *Lau v. Bautista*, 61 Haw. 144, 146-47, 598 P.2d 161, 163 (1979). In ruling on a motion for summary judgment, the trial court is required to view the record in the light most favorable to the party opposing the motion. *Bolte v. AITS, Inc.*, 60 Haw. 58, 64, 587 P.2d 810, 814-15 (1978); *Fry v. Bennett*, 59 Haw.

---

State, 58 Haw. 187, 213, 567 P.2d 397, 414, *reh. denied*, 58 Haw. 322, 568 P.2d 512 (1977); Lennen & Newell, Inc. v. Clark Enterprises, Inc., 51 Haw. 233, 238, 456 P.2d 231, 235 (1969) (holding that an appellate court will not reverse a trial court's decision on the basis of the admission of incompetent evidence unless all of the competent evidence is insufficient to support the judgment or it appears that the trial court's decision would have been otherwise if it had not considered the incompetent evidence.)

279, 280, 580 P.2d 844, 845 (1978); *Abraham v. S. E. Onorato Garages,* 50 Haw. 628, 631-32, 446 P.2d 821, 825 (1968).

One view departs from normal summary judgment procedure in two ways: (1) instead of viewing evidence in the light most favorable to the nonmovant, the trial court evaluates all evidence in its most reasonable light, and (2) instead of asking whether a jury could find actual malice with convincing clarity, the trial court determines whether it can find actual malice with convincing clarity. The justification for this radical approach is that in these types of defamation actions, defendants must be protected by the liberal grant of summary judgment in their favor in order to protect their rights of freedom of the press and freedom of speech. *See, e.g., Wasserman v. Time, Inc.,* 138 U.S. App. D.C. 7, 9-10, 424 F.2d 920, 922-23 (Wright, J., concurring), *cert. denied,* 398 U.S. 940 (1970).

The other, and apparent majority, view does not disturb the normal summary judgment procedure with regard to resolution of factual disputes; it only employs a different burden of proof in determining whether the moving party is entitled to judgment as a matter of law. *See, e.g., Nader v. de Toledano,* 408 A.2d 31, 50 (D.C. 1979), *cert. denied,* 444 U.S. 1078 (1979).

We think that the majority view is the better view. Although *New York Times* and its progeny dictate that plaintiffs in defamation actions have a burden of establishing actual malice with "clear and convincing proof," these cases do not require a departure from the normal summary judgment procedures. If there is a factual dispute about defendant's state of mind with regard to actual malice, summary judgment should not be granted. As the Supreme Court recently noted in *Hutchinson v. Proxmire,* 443 U.S. 111, 120 n.9 (1979),

> The proof of "actual malice" calls a defendant's state of mind into question, *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) and does not readily lend itself to summary disposition.

Other than the higher standard of proof which the plaintiff must carry as a matter of law, the normal summary judgment procedure should be followed in "actual malice" defamation actions. It is not within the province of the trial court at summary judgment to resolve factual disputes. Where there are genuine issues of material fact, and the moving party is not able to establish that it is entitled to a judgment as a matter of law, the case should be remanded for jury resolution.

We hold, therefore, that the trial court must deny defendant's motion for summary judgment in actual malice defamation actions, if there appears a genuine issue of material fact from which a reasonable trier of fact could find actual malice with convincing clarity, viewing all the evidence and reasonable inferences arising therefrom in the light most favorable to the plaintiff as the non-movant. Conversely, the trial court must deny plaintiff's motion for summary judgment in an actual malice defamation action, if a reasonable trier of fact could find that there was no clear and convincing proof of defendant's actual malice, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the defendant as the nonmovant.

In light of this standard for summary judgment, we now examine the evidence presented in the record concerning appellants' actual malice.

### A.

The only evidence in the record to support appellees' motion for summary judgment against appellants Rick Reed and Valley Isle Publishers, Inc. consisted of an affidavit filed by Reed and a copy of the article at issue.

In his affidavit, Reed stated that at the time he wrote the article "Link Between Crime Leader and Government is the Key," for publication in the *Valley Isle* newspaper, he did not have any information that would cause him to doubt the accuracy of the facts contained in the article. He further stated that his article was based on reliable sources, including the Hawaii Crime Commission's report on organized crime in Hawaii, other articles published in the *Honolulu Star-Bulletin,* and personal interviews.[5]

---

[5] Reed's affidavit reads in relevant part as follows:

4. Prior to the article's publication, I had studied the Commission's report and various articles published earlier by the Honolulu Star-Bulletin documenting organized crime's control of the local entertainment industry. In addition, I had personally corroborated the remarks of all individuals quoted in the article through personal interviews or from other reliable sources. I was further aware that Governor Ariyoshi was planning a massive political rally at Aloha Stadium on September 24, 1978 and that the individual entertainers listed in the article were to be featured attractions.

5. Based upon these known facts, I composed the article complained of by

Appellees presented no evidence, other than a copy of the article itself, to dispute Reed's statements in his affidavit regarding his actual intent in publishing the article. In support of their motion for summary judgment, appellees contended that the statements in Reed's affidavit on this issue were too incredible for a trier of fact to believe. Appellees' position is that the inference of Reed's actual malice could be drawn from the defamatory character of the article itself.

Appellees' reliance on its interpretation of the *Valley Isle* article is insufficient to establish Reed's actual malice. Actual malice cannot be presumed from the mere fact of the defamatory character of the publication. Affirmative proof of actual malice as to each defendant is required. *La Bruzzo v. Associated Press,* 353 F. Supp. 979, 985 (W.D. Mo. 1973); *Nader v. de Toledano,* 408 A.2d at 41.

Mere investigatory failure on the part of Reed to determine whether the specific entertainers named in his article were actually connected with organized crime is also insufficient to establish that Reed acted with knowing falsity or reckless disregard of the truth. As we stated in *Tagawa v. Maui Publishing Co. (Tagawa II),* 50 Haw. at 652-53, 448 P.2d at 340,

> An investigatory failure alone on the part of the publisher, without a high degree of awareness of probable falsity may raise the issue of negligence but not the issue of "actual malice." In other words, mere negligence is not "actual malice."

(citations omitted). *See also St. Amant v. Thompson,* 390 U.S. at 731-32; *Garrison v. Louisiana,* 379 U.S. at 74; *New York Times v. Sullivan,* 376 U.S. at 279-80.

Appellees cannot satisfy the obligation of showing actual malice simply by asserting that the only evidence concerning Reed's state of

---

Plaintiffs. At the time the article ran, I possessed no serious doubts concerning the accuracy of the facts reported therein and I had no information which indicated or tended to indicate that the articles's [sic] contents might be false or that raised any reasonable question in my mind as to the truth matters stated[sic] in the article.

6. I have neither seen nor heard any information since the time of publication which would cause me to alter my opinion on the accuracy of the contents of the article.

7. I have never reported that any of the individual Plaintiffs above-named is or has been actively involved in organized crime.

Record at 80-81.

mind is too incredible for a reasonable person to consider. Viewing the record in the light most favorable to Reed as the non-movant, there is a genuine issue of material fact from which a reasonable jury could conclude that there was no clear and convincing proof of Reed's actual malice.

We are not saying, of course, that Reed is entitled to judgment as a matter of law. We hold only that on the record as it now exists, there is a jury triable issue as to Reed's actual malice in publishing the *Valley Isle* article, which precludes summary judgment in favor of either party. We thus reverse the grant of summary judgment in favor of appellees with regard to appellants Rick Reed and Valley Isle Publishers, Inc. and affirm the denial of summary judgment in favor of appellants Rick Reed and Valley Isle Publishers, Inc.

B.

We now examine the statement made by appellant Wayne Nishiki to the students at Chaminade University on September 25, 1978. Unlike the article written by Rick Reed, Wayne Nishiki's statement did not name any specific entertainers. Nishiki mentioned the fact that Governor Ariyoshi's fundraiser included top-named entertainers, but stopped short of saying that the entertainers themselves were involved with organized crime. Nishiki maintains that he only stated that organized crime has a foothold on the entertainment industry as a whole, rather than any particular group of entertainers.

Appellees' evidence with regard to Nishiki's actual malice rests primarily on the deposition taken of Nishiki on February 6, 1980. Appellees emphasize the following statements made by Nishiki at his deposition:

Q. (Judith Ann Pavey, Esquire)   Do you have any reason to believe that any particular entertainer, specifically the ones that are named in this lawsuit, are connected to or controlled by organized crime? And I am showing you the caption on the Complaint which lists all the plaintiffs in this case.

A. (Wayne Nishiki)   No.

Deposition of Wayne Nishiki at 17.

\*   \*.   \*

Q. (Pavey)   With respect to these specific entertainers who

all played at the Aloha Stadium gathering in support of Governor Ariyoshi, do you have any evidence that any of those entertainers were controlled by criminals?

A. (Nishiki)   No, I already mentioned that statement.

*Id.* at 27-28. Appellees interpret Nishiki's statements as an admission of deliberate falsification.

Appellees, however, have taken the quoted statements out of context. Throughout his deposition, Nishiki steadfastly maintained that while he made statements to the effect that the entertainment industry itself was connected with organized crime, he never made any statements connecting the specific entertainers named in this action with organized crime. The following exchanges occurred between Nishiki and appellees' counsel prior to the statements which appellees find so incriminating:

Q. (Pavey)   So you didn't mean to suggest that there was a connection between the entertainers at the Aloha Stadium and organized crime; is that correct?

A. (Nishiki)   What are you saying? That the entertainers were part of our organized crime?

Q. That is what I am asking you.

A. No.

Q. You didn't mean that?

A. No.

Q. Did you ever mean to suggest that the entertainers who played at Aloha Stadium were controlled by or connected to organized crime?

A. Not the specific entertainers that were playing at Aloha Stadium.

Q. Did you mean to suggest that any particular entertainers were?

A. Controlled?

Q. Or connected to.

A. No.

*Id.* at 13-14.

\* \* \*

Q. (Pavey)   And I asked you if you had any evidence of organized crime having control over specific entertainers, and you said no?

A. (Nishiki)   Right.

Q. So now I am asking you if when you say entertainment industry, do you mean specific entertainers, or does the entertainment industry in your mind indicate something else besides the specific entertainers?

A. I don't know what you are driving at. To me, the entertainers are part of the entertainment industry. The entertainment industry is [sic] a broader sense. Now I have already cleared the statement that I did not speak of any specific entertainers, so what is there, the problem in your understanding that? I don't understand.

Q. Because when I asked you whether or not you have any evidence that criminals controlled entertainers, you said no. So I am asking —

A. Specific entertainers is what I was saying. But as far as the control of the entertainment industry itself, it is spelled out in the Crime Commission report and by Pierre Bowman that they do have, organized crime has a foothold in the entertainment industry. What is so hard to understand?

*Id.* at 27.

At the hearing on the parties' motions for summary judgment, appellees' counsel introduced a campaign advertisement for Wayne Nishiki as additional evidence of Nishiki's actual malice. The advertisement quotes the Hawaii Crime Commission report and an article written by Pierre Bowman for the *Honolulu Star-Bulletin* to support the following statement printed in bold type:

CRIMINALS CONTROL ENTERTAINERS

Did you know that organized crime has a stranglehold on our entertainment industry?

The advertisement makes no mention of any specific performer or to Governor Ariyoshi's political rally. Appellees argue that the advertisement is probative evidence of Nishiki's intent to defame entertainers. Appellees also attempt to use the advertisement to impeach Nishiki's statement at his deposition that he did not intend to connect specific entertainers with organized crime. The advertisement, however, could be equally interpreted to support Nishiki's position that he only intended to establish a connection between organized crime and the entertainment industry as a whole, rather than the specific entertainers named in this action.

The only other evidence in the record concerning Nishiki's actual malice was the affidavit submitted by Nishiki in support of his motion for summary judgment.[6] In his affidavit, Nishiki reiterated his position that he never said any of the individual appellees were actively involved in organized crime. Nishiki again maintained that his remarks about organized crime's control of the local entertainment industry were based on the Hawaii Crime Commission report and a series of articles published in the *Honolulu Star-Bulletin,* which he believed to be accurate.

The evidence when considered as a whole demonstrates a factual dispute which requires resolution at trial. There is an issue of fact as to whether Nishiki's statement was susceptible to an innocent meaning by reasonable persons and whether Nishiki acted with the requisite actual malice. We have held in the past that if a statement can be interpreted as having both an innocent and a defamatory meaning, it is within the province of the jury, rather than the trial court in summary judgment, to determine the sense in which it was understood. *Cahill v. Hawaiian Paradise Park Corp.,* 56 Haw. at 527, 543 P.2d at 1361; *Tagawa v. Maui Publishing Co. (Tagawa I),* 49 Haw. 675, 679, 427 P.2d 79, 82 (1967), *appeal after remand,* 50 Haw. 648, 448 P.2d 337 (1968).

On the record presented, Nishiki has demonstrated a jury triable issue of fact as required under HRCP Rule 56(c). We thus reverse

---

[6] Nishiki stated in his affidavit that

3. On or about September 25, 1978, I had occasion to address students of Chaminade University. Portions of this talk were apparently video-taped by KITV and broadcasted on their evening newscast.

4. My remarks that day were based upon known facts which I believed to be true at the time of my talk with the students.

5. In repeating these known facts, I relied, in part, upon the findings on organized crime earlier published by the Hawaii Crime Commission in August of 1978 and a series of articles published in the Honolulu Star-Bulletin which document organized crime's control of the local entertainment industry.

6. At the time, I had no reason to doubt the accuracy of these published reports and I possessed no knowledge of any reports to the contrary.

7. In the absence of any clear and convincing evidence to the contrary, I continue to believe in the accuracy of my remarks and have no serious doubts about the truth of the matters stated in my address to the students.

8. I have never stated that any of the individual Plaintiffs above-named is or has been actively involved in organized crime.

Record at 78-79.

the grant of summary judgment in favor of appellees with regard to appellant Wayne Nishiki and affirm the denial of Nishiki's motion for summary judgment. Again, we emphasize that we are not holding in any way that appellants are entitled to a judgment on this issue as a matter of law. We are only holding that the jury is the proper entity to make this decision.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

*Rick Reed,* defendant-appellant pro se.

*David C. Schutter (Judith Ann Pavey* with him on the brief, *David C. Schutter,* Attorney at Law, a Law Corporation, of counsel) for plaintiffs-appellees.

On the briefs: *Edward Y. N. Kim, Bruce B. Kim (Edward Y. N. Kim* and *Bruce B. Kim,* Attorneys at Law, of counsel) for defendants-appellants.