MARTHA L. "BILLIE" BEAMER, Plaintiff-Appellee, *v.* WAYNE NISHIKI dba COMMITTEE TO ELECT WAYNE NISHIKI LT. GOVERNOR; VALLEY ISLE PUBLISHERS, a Partnership, and RICK REED, Defendants-Appellants, and JAMES LESLIE MOORE, GEOFFREY SILVA, Partners therein; VALLEY ISLE PUBLISHER, INC., a purported Hawaii Corporation; JOHN DOES 1-10; and JOHN DOE CORPORATIONS 1-10, Defendants

NO. 9054

CIVIL NO. 55933

OCTOBER 4, 1983

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Once again we must decide the propriety of summary judgment in a public figure defamation action. The present case has its roots in the allegations of underworld involvement which were the subject of this court's opinion in *Mehau v. Gannett Pacific Corp.,* 66 Haw. 134, 658 P.2d 312 (1983), and, in addition, involves basically the same defendants and election campaign presented in *Rodriguez v. Nishiki,* 65 Haw. 430, 653 P.2d 1145 (1982). Again we reach the same conclusion: this case presents genuine issues of material fact which require consideration by a jury. We therefore reverse the trial court's order of summary judgment in plaintiff's favor, affirm the denial of defendants' motion for summary judgment, vacate the jury's damage award, and order a complete new trial on all issues of the case.

## FACTS

For background (as outlined in *Mehau,* 66 Haw. at 138-42), in 1977 Larry E. Mehau was the subject of controversy over alleged ties to the underworld. One source of the charges was an article in *The Valley Isle,* a biweekly tabloid published on

Maui with a normal press run of twelve thousand copies.[1] *Id.* at 139 n. 4. The publisher and editor of *The Valley Isle* was Rick Reed, a defendant here.

The following year, Martha L. "Billie" Beamer and Wayne Nishiki were opposing candidates in the 1978 Democratic primary for the Lieutenant Governor's office.[2] Rick Reed was Nishiki's campaign manager and public relations man.

During the campaign, Beamer was publicly endorsed by David Trask, head of the Hawaii Government Employees' Association. Reed interviewed Beamer about additional possible support by Larry Mehau and published the interview in *The Valley Isle* on September 1, 1978. Beamer did acknowledge unsolicited help from Mehau though disclaimed any knowledge of Mehau as an underworld figure or any substantial involvement by Mehau in her campaign.[3]

---

[1] *The Valley Isle* is now defunct.

[2] Beamer concedes she was a "public figure" at the time of the campaign.

[3] The pertinent portions of the interview are as follows:
Beamer:   .... He [Mehau] helped on that fundraiser and he's been helpful. And, uhh, why wouldn't I acknowledge help from him and acknowledge help from other people?
Valley Isle [Reed]:   What did he do for your Kauai fundraiser?
Beamer:   Uhh . . . he got the music there . . . and he was there himself.
Valley Isle:   What is your relationship with Mehau? 
Beamer:   I don't think it's any of your business. I'm a friend of his.
Valley Isle:   We're hearing from all kinds of directions that Larry Mehau is helping your campaign statewide. Many people have told me that he is raising funds for you and he and his friends are contacting people, telling them to vote for you. Is that true?
Beamer:   Well, if he is a friend, I would think that he would ask his friends to help. That's the nature of a campaign. I have lots of other friends who are doing the same kinds of things. You're focusing on Larry because you have a concept that he is perhaps something less than desirable. I do not see it that way. And I don't feel its fair for a reporter to make that assumption.

. . . .

Beamer:   He is not on our committee. Uhh, he is not a member of our committee. He's a friend on the outside who wanted to have . . . said, "Hey! I want to help. Uh, I can help you in this way . . ."
Valley Isle:   So Mehau approached you?
Beamer:   Well, Larry really never did approach. He just . . . the help was just there.

On September 19, 1978, *The Valley Isle* published the campaign advertisement which prompted this suit:

David Trask (HGEA) has publicly endorsed Billie Beamer, just as he has endorsed George Ariyoshi. Larry Mehau is working behind the scenes to help Billie Beamer, just as he has helped George Ariyoshi throughout Ariyoshi's political career.

**MEHAU AND TRASK NEVER HELP ANYONE THEY DON'T CONTROL.**

If you don't want Mehau and Trask running our State government, be careful not to vote for Ariyoshi and Beamer.

Clean up
State
Government
Vote

**NISHIKI**

Lt. Governor
(D)

Although claiming that Beamer was "controlled" by Trask and Mehau, the ad contained no express references to the underworld. Rick Reed wrote the ad and Nishiki approved it. Reed and Nishiki republished the ad many times and made it into

Valley Isle: He never did contact you? He wants Billie Beamer to be the next Lt. Governor and he just began helping?

Beamer: Yes.

Valley Isle: So you've never discussed with Mehau what he is doing to help your campaign?

Beamer: Well, I never said "You do this" or "You do that." When you're running for office, you accept help from wherever you can get it. You need help. No one can run without it.

. . . .

Nishiki TV commercials which repeated the charge that Beamer was controlled by Mehau and Trask.[4]

On October 12, 1978, Beamer filed suit for defamation against defendants Nishiki, "Valley Isle Publishers, Inc., a purported corporation," and defendants Moore, Reed, and Silva as partners in the Valley Isle Publishing partnership. Both sides moved for summary judgment. The trial court granted plaintiff's motion for summary judgment and denied defendant's motion on February 1, 1980, prior to this court's opinions in *Rodriguez v. Nishiki* and *Mehau v. Gannett*. The trial court ruled (1) the statements were libelous per se; (2) Nishiki had no basis for his "control" statement; (3) Nishiki made the statement with no knowledge of its truth or falsity and therefore acted with "utter disregard for whether the statement was false or not"; and (4) the facts were undisputed as a matter of law.

Following summary judgment the parties went to trial on the issue of damages. The first jury hung; the second awarded plaintiff $35,000 in damages. Defendants now appeal the trial court's summary judgment ruling but do not appeal the jury's determination of damages.

## DISCUSSION

Unlike other appellate matters, in reviewing summary judgment decisions an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied. *Fernandes v. Tenbruggencate,* 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982). The trial court ruled on both

---

[4] During the campaign, Reed also wrote and published in *The Valley Isle* an article tying noted Hawaiian entertainers to the underworld. *Rodriguez,* 65 Haw. at 432, 653 P.2d at 1147. Nishiki made public statements repeating the charge and the Nishiki campaign produced an ad proclaiming: "CRIMINALS CONTROL ENTERTAINERS Did you know organized crime has a stranglehold on our entertainment industry?" *Id.* at 444, 1154. Several entertainers sued Nishiki and Reed for defamation and were granted summary judgment which the defendants then appealed to this court. *See, Rodriguez v. Nishiki,* 65 Haw. 430, 653 P.2d 1145 (1982). Because issues of fact were present, this court reversed the trial court's summary judgment in plaintiff's favor and remanded the case for trial. *Id.*

plaintiff's and defendants' motions for summary judgment; we therefore consider each in turn.

I.

## PLAINTIFF'S SUMMARY JUDGMENT

The present case parallels *Rodriguez* closely so we look there for guidance. The paramount lesson of *Rodriguez* is "the normal summary judgment procedure should be followed in 'actual malice' defamation actions." 65 Haw. at 439, 653 P.2d at 1151. Summary judgment for the plaintiff is proper only "where the record reveals that there is no genuine issue as to any material fact," viewing the record in the light most favorable to the defendants. *Id.* at 438, 1150.

Moreover, the trial court must find the plaintiff is entitled to judgment as a matter of law. Hawaii Rules of Civil Procedure (HRCP) 56(c). This is indeed a difficult hurdle to clear. As we stated in *State v. Zimring,* 52 Haw. 472, 475, 479 P.2d 202, 204 (1970) (quoting *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.,* 381 F.2d 245 (4th Cir. 1967)), "'It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" To prevail here on summary judgment, plaintiff must establish as a matter of law each element of defamation by a preponderance of the evidence except the element of actual malice, which must be proven with a higher standard of "clear and convincing proof." *Rodriguez,* 65 Haw. at 438-39, 653 P.2d at 1150-51. The presence of an issue of fact from which a reasonable trier of fact could find plaintiff had not met her burden of proof on even one element of her defamation claim would be sufficient to defeat her motion for summary judgment. *Id.* at 440, 1151.

To prove defamation, the plaintiff must establish four elements:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement (Second) of Torts § 558 (1977). In the present case, there are questions of fact concerning elements (a) and (c).[5]

1. *False and Defamatory Statement*

The truth of defendants' statement is questionable but plaintiff did not establish its falsity as a matter of law. The ad stated that Ariyoshi and Beamer were controlled by Trask and Mehau. While Beamer refutes its truth, both Reed and Nishiki maintain in their answer, affidavit, and deposition that the statement is true.

The defendants' answer claims the statement was true. R. at 16. Nishiki's affidavit states "I continue to believe that its [the ad's] contents were true in substance and in fact . . . ." R. at 79-80. Reed's affidavit also claims no doubts as to the truth of the statement. R. at 82. Finally, in his deposition Nishiki stated he considered the statement true.[6] Viewing the record from

---

[5] The ad was published and defendants have not raised a possible privilege justifying publication. Also, because summary judgment was granted as to liability only, damages are not at issue here.

[6] The pertinent portions of Nishiki's deposition are as follows:

Q. [David C. Schutter, Esq.] Okay. Without pinning down as to whether you first saw it [the ad] before it ran or first saw it in the newspaper, did you have a reaction when you saw it?

A. [Nishiki] Did I have a reaction?

Q. [Schutter] A reaction. You first saw it either before it ran or when it appeared in the newspaper. What was your reaction to it?

A. [Nishiki] I don't know what you mean. What do you mean by "reaction"?

Q. [Schutter] Did you say to yourself, "Groovy. Right on"? Did you say to yourself

—

A. [Nishiki] I thought it told the truth.

Q. [Schutter] Okay. Did you have a favorable reaction to it?

A. [Nishiki] Favorable or not, I think it told the truth.

. . . .

Q. [Schutter] Okay. Is there anything in the ad with which you either then or now disagreed with?

A. [Nishiki] No.

defendants' point of view there is at least some question whether Beamer was in fact controlled by Trask and Mehau and it is a question of fact for the jury.

Whether defendants' statement was defamatory also raises a question of fact. This court recently stated the proper test for ascertaining when a statement is defamatory:

> A communication is defamatory when it tends to "harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1976); *Kahanamoku v. Advertiser,* 25 Haw. 701 (1920). Whether a communication is defamatory "'depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place.'" *Schermerhorn v. Rosenberg,* 73 A.D. 2d 276, 284, 426 N.Y.S.2d 274, 282 (1980). *Kahanamoku, supra.*

*Fernandes v. Tenbruggencate,* 65 Haw. at 228, 649 P.2d at 1147. Here the ad stated that Beamer was controlled by Trask and Mehau, without express mention of the organized crime connection. Thus the question is whether use of the word "control" in connection with the names Trask and Mehau is defamatory per se; that is, whether "MEHAU AND TRASK NEVER HELP ANYONE THEY DON'T CONTROL" is capable of either an innocent or defamatory interpretation, or could only as a matter of law be interpreted as defamatory.

Both sides bombard us with different definitions of "control."[7] Viewing the ad itself, the words "known puppet" and "Mehau and Trask running our State government" might lead the reader to interpret "control" as "dominate" or "dictate." In

---

[7] For example, at oral argument Defendant Reed interpreted the statement "MEHAU AND TRASK NEVER HELP ANYONE THEY DON'T CONTROL" as meaning "Mehau and Trask never help anyone whose help they can't count on once the candidate is elected to office."

his deposition, however, Nishiki gave a more innocuous definition:

> Q. [Schutter] What do you mean by "control"?
>
> A. [Nishiki] Influence.
>
> Q. [Schutter] Influence? Well, you follow up by saying, "If you don't want Mehau and Trask running our state government, be careful not to vote for Ariyoshi and Beamer." Now, by that, do you mean running the government, or that they might influence the government?
>
> A. [Nishiki] They might influence.
>
> Q. [Schutter] They have great influence?
>
> A. [Nishiki] Yes.
>
> Q. [Schutter] But you say "running our government." Did you mean running our government or did you mean influencing our government?
>
> A. [Nishiki] Well, I said that they have great influence, and that is what I'm saying.

Deposition of Wayne Nishiki at p. 192.[8]

Viewing the issue in defendants' light, we cannot say the assertion that Beamer was strongly influenced by two men was defamatory per se. The possible defamatory character of the statement lies in the implication that Beamer was a puppet of a union leader and a rumored underworld figure. In the context of the times, that implication was very feasible, but on its face the statement falls short of being defamatory as a matter of law. It is for the jury to consider the context of the statement and determine whether it lowered Beamer's reputation in the estimation of the community. *Fong v. Merena,* 66 Haw. 73, 74 n. 1, 655 P.2d 875, 876 n. 1 (1982); *Fernandes v. Tenbruggencate,* 65 Haw. at 228, 649 P.2d at 1147; *Chedester v. Stecker,* 64 Haw. 464, 469, 643 P.2d 532, 535 (1982).

In *Rodriguez,* this court ruled in part that the defamatory character of another of Nishiki's statements ("CRIMINALS CONTROL ENTERTAINERS Did you know that organized crime has a stranglehold on our entertainment industry?") was a matter for the jury:

---

[8] *See* Nishiki's second deposition taken on November 30, 1979.

> There is an issue of fact as to whether Nishiki's statement was susceptible to an innocent meaning by reasonable persons and whether Nishiki acted with the requisite actual malice. We have held in the past that if a statement can be interpreted as having both an innocent and a defamatory meaning, it is within the province of the jury, rather than the trial court in summary judgment, to determine the sense in which it was understood.

*Rodriguez,* 65 Haw. at 445, 653 P.2d at 1154-55. The statement at issue in this case ("MEHAU AND TRASK NEVER HELP ANYONE THEY DON'T CONTROL") is similar enough that the question of whether it was defamatory should go to the jury.

### 2. *Actual Malice*

Beamer concedes she is a public figure. A public figure defamation plaintiff must prove with clear and convincing proof that the defendant acted with actual malice. *Rodriguez,* 65 Haw. at 439, 653 P.2d at 1151.

This court has defined "actual malice" as " 'deliberate falsification' of facts or 'reckless disregard' of the truth, i.e., reckless publication despite a high degree of awareness, harbored by the publisher, of the probable falsity of the published statements." *Tagawa v. Maui Publishing Co., (Tagawa II),* 50 Haw. 648, 652, 448 P.2d 337, 340, *cert. denied,* 396 U.S. 822 (1968). Moreover, this court has agreed with the U.S. Supreme Court that reckless disregard is a subjective question of the defendant's state of mind:

> "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."

*Mehau v. Gannett Pacific Corp.,* 66 Haw. at 148, 658 P.2d at 322 (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968)). As this court stated in *Rodriguez:*

> If there is a factual dispute about defendant's state of mind with regard to actual malice, summary judgment should not be granted. As the Supreme Court recently noted in *Hutchinson v. Proxmire,* 443 U.S. 111, 120 n. 9, 99 S.Ct.

2675, 2680 n. 9, 61 L.Ed.2d 411 (1979), the proof of "actual malice" calls a defendant's state of mind into question, *New York Times Co. v. Sullivan,* 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964), and does not readily lend itself to summary disposition.

*Rodriguez,* 65 Haw. at 439, 653 P.2d at 1151; *quoted in Mehau,* 66 Haw. at 146, 658 P.2d at 321.

Proving defendants acted with a high degree of awareness of the ad's probable falsity is extremely difficult as a matter of law. "The existence or absence of malice is generally a question for the jury." *Runnells v. Okamoto,* 56 Haw. 1, 5, 525 P.2d 1125, 1129 (1974). As we noted in *Rodriguez,* an ad's defamatory character, the defendants' failure to investigate, and the incredibility of evidence concerning defendants' state of mind together do not constitute actual malice as a matter of law:

Actual malice cannot be presumed from the mere fact of the defamatory character of the publication. . . . .

Mere investigatory failure on the part of Reed to determine whether the specific entertainers named in his article were actually connected with organized crime is also insufficient to establish that Reed acted with knowing falsity or reckless disregard of the truth. . . . .

Appellees [also] cannot satisfy the obligation of showing actual malice simply by asserting that the only evidence concerning Reed's state of mind is too incredible for a reasonable person to consider.

*Rodriguez,* 65 Haw. at 441-42, 653 P.2d at 1152; *See also, Fong v. Merena,* 66 Haw. at 75, 655 P.2d at 876-77.

Of course, we have also noted that professions of innocence alone are not a conclusive defense to a defamation suit:

The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. *The finder of fact must determine whether the publication was indeed made in good faith.* Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's

584

allegations are so inherently improbable that only a reck-less man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."

*Mehau,* 66 Haw. at 148, 658 P.2d at 732 (quoting *St. Amant v. Thompson,* 390 U.S. at 732) (emphasis added). Yet, as the emphasized portion indicates, the question of the defendant's state of mind is generally a question for the trier of fact, not for summary judgment.[9]

Applying the law to the present case, we note that plaintiff must prove each defendant acted with actual malice. *Rodriguez,* 65 Haw. at 441, 653 P.2d at 1152. Nishiki's affidavit states that he thought the ad was true and had no doubts about the basis of his knowledge. R. at 79-80.[10] At his depositions Nishiki was extremely evasive but did state that he agreed with the ad. Nishiki Deposition at 166-68, fn. 6, *supra.* Finally, Nishiki's

---

[9] None of the cases cited by plaintiff counter our conclusion. In *Carson v. Allied News Company,* 529 F.2d 206 (7th Cir. 1976), for example, the court overturned summary judgment *for the defendant* after finding issues of material fact. The trial court's findings of fabrication and plagiarism were sufficient in the court of appeals' eyes to preclude summary judgment *for the defendant. Id.* at 213. Nothing in the case, however, suggests the proof adduced would have been sufficient to sustain summary judgment *for the plaintiffs.* In fact, plaintiff has not led us to and we have searched in vain for a single case upholding summary judgment for a public figure defamation plaintiff.

[10] The relevant portions of Nishiki's affidavit read:

5. I did not compose the advertisement which Mrs. Beamer find [sic] offensive. However, I did endorse the advertisement as it ran and in the absence of any clear and convincing evidence to the contrary, I continue to believe that its contents were true in substance and in fact and that the electorate had the right to know about the kind of persons they were voting for.

6. I knew that David Trask, executive director of the HGEA, publicly endorsed Mrs. Beamer's campaign and that the announcement was televised at a press confernece [sic] attended by Mr. Trask and Mrs. Beamer. Larry Mehau is a former member of the State's Board of Land and Natural Resources and is often mentioned as a close friend and political associate of the Governor of the State of Hawaii. Mrs. Beamer publicly acknowledged Mr. Mehau's help in arranging musical entertainment at her rallies and his active support of her campaign in Issue 30 of The Valley Isle.

7. Accordingly, I entertained no serious doubts as to the truth of the matters stated in the allegedly defamatory advertisement nor did I know of any information which would have left me with a high degree of awareness as to the probable falsity of the published statements.

answer claims he "honestly believed" the statements were true. R. at 16. Viewing the record as we must in Nishiki's favor, we conclude his statements do raise at least a question of fact from which a reasonable jury could find he had less than a high degree of awareness that the ad was probably false.

Reed's affidavit states he also had no doubts about the truth of the ad.[11] Plaintiff never deposed Reed to test his basis for the statement, so we are unable to say as a matter of law that he had none.[12] Consequently, we reverse the trial court's summary judgment for plaintiff.

---

8. The advertisement complained of was published in good faith to inform the electorate of matters relating to Mrs. Beamer's qualifications for the second highest elective office in the State of Hawaii in which they had a legitimate and substantial interest. It was fair comment and she had the oportunity and the means to rebut the facts presented therein during the campaign.

[11] The relevant portions of Reed's affidavit read:

6. At the time the advertisement ran, I knew that Mr. David Trask, executive director of the HGEA, had publicly endorsed and supported the Plaintiff's candidacy and that the Plaintiff admitted to me in an interview published in Issue 30 of *The Valley Isle* that Larry Mehau, a former member of the State Board of Land and Natural Resources and a person often described as a close friend and political associate of the present Governor of this State, helped to coordinate musical entertainment at Plaintiff's political rallies and actively supported her candidacy for Lt. Governor.

7. I, therefore, possessed no serious doubts concerning the truth of statements set forth in the advertisement and I had no information which indicated or tended to indicate that the ad might be false or that raised any reasonable question in my mind as to the truth of the ad's contents.

8. I have neither seen nor heard any information since that time which would cause me to alter my opinion on the contents of the Nishiki advertisement.

[12] Beamer's contention that Reed's only source of information was his interview with her is clearly wrong because Reed stated in the interview that he had heard of Mehau's involvement from many sources:

Valley Isle: What is your relationship with Mehau?

Beamer: I don't think it's any of your business. I'm a friend of his.

Valley Isle: *We're hearing from all kinds of directions* that Larry Mehau is helping your campaign statewide.. *Many people have told me that* he is raising funds for you and he and his friends are contacting people, telling them to vote for you. Is that true?

Beamer: Well, if he is a friend, I would think that he would ask his friends to help. That's the nature of a campaign. I have lots of other friends who are doing the same kinds of things. You're focusing on Larry because you have a concept that he is perhaps something less than desirable. I do not see it that way. And I don't feel it's fair for a reporter to make that assumption.

R. at 84 (emphasis added).

## II.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

We also find in the record genuine issues of fact which, if resolved in Beamer's favor, could lead a reasonable jury to find defendants defamed her. Beamer's complaint maintains that the allegations of control "are false and expose Plaintiff to hatred, contempt, and ridicule." R. at 8. Her affidavit states she has no connection with organized crime and has never been controlled by anyone. R. at 181. She also alleges that she lost the 1978 campaign as a direct result of defendants' statement when voters switched their votes after reading or hearing defendants' ad. R. at 182. Giving these statements credence we find plaintiff has met her initial burden to raise a genuine issue of material fact from which a reasonable trier of fact could find the ad was false and defamatory. *Runnells v. Okamoto,* 56 Haw. at 5, 525 P.2d at 1129.

There are also "issues of material fact from which a reasonable trier of fact could find actual malice [on the part of defendants] with convincing clarity." *Rodriguez,* 65 Haw. at 440, 653 P.2d at 1151. Reading Nishiki's deposition in Beamer's light, it is reasonable to infer Nishiki acceded in publication of the ad with a high degree of awareness that the allegations of control were false. In his deposition, Nishiki repeatedly failed to provide a satisfactory answer to questions about his basis for the "control" statement. The best Nishiki could do was maintain that he meant Mehau and Trask had a lot of influence and had helped Beamer's campaign, a far cry from the puppeteering connoted by the ad.[13] *See,* Nishiki Deposition, p. 99-100, 168-70, 191-97. If all Nishiki actually knew was that Mehau and Trask had endorsed Beamer, a reasonable jury could very well find with convincing clarity

---

[13] According to *Fernandes v. Tenbruggencate,* 65 Haw. at 230-31, 649 P.2d at 1148, the ad is to be read as a whole to determine its defamatory impact. Thus the reference to Governor Ariyoshi as a "known puppet" may be used to construe the possible meaning of "MEHAU AND TRASK NEVER HELP ANYONE THEY DON'T CONTROL."

that the allegations of "control" were made with reckless disregard for the truth.

Neither is defendant Reed entitled to summary judgment. He wrote the ad and television commercial in question. Viewing the record from Beamer's point of view, all we have before us regarding Reed's source of information is his interview of Beamer in which Beamer admitted Mehau's unsolicited help but denied any knowledge of Mehau's alleged underworld ties and described Mehau's involvement in her campaign as minimal. There was no discussion of Trask at all. The only grounds stated by Reed in his affidavit for the "control" allegation was his knowledge that Trask had publicly endorsed Beamer and Mehau had helped to coordinate musical entertainment at Beamer's political rallies. R. at 82. If Reed had no further information as to Trask's and Mehau's involvement with Beamer, his subsequent allegations that Beamer was controlled by Mehau and Trask could well have been made with reckless disregard for the truth.[14]

Finally, it would be incongruous to find, as defendants urge us to, that plaintiff's summary judgment must be reversed because of issues of material fact raised by looking at the record in defendants' light, and then hold that the same record produced no issues of material fact if viewed in plaintiff's favor. Consequently, we affirm the trial court's denial of defendants' motion for summary judgment.

### III.

As a final note, we address the question of whether on remand Rick Reed may represent *The Valley Isle* in his claimed capacity as trustee of the dissolved corporation. To begin with, there appears to be some factual dispute about whether *The*

---

[14] Viewing the record in the light most favorable to Beamer, and without an affidavit or deposition of Reed to consider, we do not think that Reed's oblique references in the Beamer interview to other sources of information provide a basis for his allegations of control.

*Valley Isle* was a corporation or a partnership.[15] Although we note the issue, for the purposes of our comments here regarding Reed's representation we do not find it necessary to resolve *The Valley Isle's* legal status.

Reed is not an attorney. In *In re Ellis,* 53 Haw. 23, 487 P.2d 286 (1971), *cert. denied,* 405 U.S. 1075 (1972), we noted that upon dissolution of a corporation the shareholders become the real parties in interest to litigation involving the dissolved corporation. We then decided that a non-attorney dissolution trustee appeared in the interests of the dissolved corporation's shareholders and consequently engaged in the unauthorized practice of law. *Id.* at 29, 290.

Likewise, under Hawaii Revised Statutes § 425-138, upon dissolution partnership property is first applied to the partnership liabilities and then any surplus distributed to the partners, making the former partners the real parties in interest to litigation involving a dissolved partnership. Regardless of whether *The Valley Isle* was a corporation or partnership, therefore, Moore and Silva are real parties in interest and Reed's attempt to appear on behalf of the dissolved *The Valley Isle* is actually an appearance on behalf of Moore and Silva. *Cf., Ellis,* 53 Haw. at 29, 487 P.2d at 268. Reed's activities thus constitute the unauthorized practice of law. Therefore, Reed, as trustee, will not be allowed to continue pro se in his practice of law representing *The Valley Isle.*

Summary judgment for plaintiff is reversed. Denial of defendants' motion for summary judgment is affirmed. The jury damages verdict is vacated and this case is remanded to the circuit court for a complete new trial.[16]

---

[15] Plaintiff's complaint alleges that *The Valley Isle* was a general partnership. R. at 15. The record, however, contains *The Valley Isle's* articles of incorporation and affidavits of officers certified by the State Director of the Corporation and Securities Administration. R. at 273-78. Defendants James L. Moore and Geoffrey Silva, shareholders, were dismissed from the suit. *See* Defendant-Appellants' Opening Brief, p. 2 n.1; *Rodriguez,* 65 Haw. at 435, 653 P.2d at 1149.

[16] While we have the discretion to order a partial new trial under HRCP 59(a), we do not feel this case deserves deviation from the general rule that when a former judgment is vacated, all the issues of the case are tried anew. 58 Am. Jur 2d *New Trials*

*Randolph R. Slaton* (*Chee, Lee, Oshiro & Williams,* of counsel) for Appellant Wayne Nishiki.

*Rick Reed,* Pro Se, Individually and as Trustee in Dissolution for Valley Isle Publishers, Inc., Appellants.

*David C. Schutter* and *Robert K. Merce* (*Schutter Pavey Cayetano,* of counsel) for Appellee.

.

---

§§ 228, 229 (1971). Defendants' claim that we must order a partial new trial is without merit. "It is always within the power of the court to require that a new trial shall be general instead of partial; and a party, by moving for a new trial as to one issue only, cannot restrict the exercise of this power." *Id.* at § 25; *see also,* 6A MOORE'S FEDERAL PRACTICE ¶ 59.06 at 59-64 to 59-67 (1982).