**Conrad Bryson BUSH, on Behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**Ronald R. REWALD, et al., Defendants.**

**Civ. No. 84–0881.**

United States District Court, D. Hawaii.

Sept. 25, 1985.
As Amended Jan. 14, 1986.

Elizabeth Joan Cabraser, Robert L. Lieff, Lieff & Cabraser, Jonathan J. Wilcox, Mills & Wilcox, San Francisco, Cal., Dennis Tonsing, Richard M. Heimann, Tonsing & Heimann, Danville, Cal., Paul E. DiBianco, Honolulu, Hawaii, for plaintiffs.

Donald A. Beck, Robert A. Rowan, Thomas E. Crowley, Rhonda L. Griswold, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for Jason G.F. Wong.

William F. Quinn, William C. McCorriston, Bruce C. Lamon, Goodsill Anderson Quinn & Stifel, Honolulu, Hawaii, for Dana Smith.

Alexander C. Marrack, Wesley H. Ching, Patricia K. Wall, Hoddick, Reinwald, O'Connor & Marrack, Honolulu, Hawaii, for Gerald N.Y.C. Lam.

John R. Dwyer, Jason N. Baba, Carlsmith & Dwyer, Honolulu, Hawaii, for D. Alden Newland.

David W. Proudfoot, David Allan Feller, Case Kay & Lynch, Honolulu, Hawaii, for Ralph D. Black.

Edmund Burke, Gary L. Miller, Burke, Sakai, McPheeters, Bordner & Gilardy, Honolulu, Hawaii, for John Ing.

James F. Ventura, Rodney S. Nishida, Adrian Y. Chang, Libkuman, Ventura, Ayabe & Hughes, and Luman N. Nevels, Honolulu, Hawaii, for William E. Jolly.

Gerald S. Clay, Stanton, Clay & Tom, Honolulu, Hawaii, for Daniel Clement.

Eric A. Seitz, Honolulu, Hawaii, for Karen Koshko Cunningham.

Leslie K.W.C. Fong, Law Offices of Paul A. Tomar, Honolulu, Hawaii, pro se.

## DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

PENCE, District Judge.

In the summer of 1983, the investment house of Bishop, Baldwin, Rewald, Dillingham & Wong (Bishop Baldwin) was revealed as a gigantic fraud, a "Ponzi scheme, upon those who had entrusted their money to it. Bankruptcy immediately followed.

The factual background of the firm, its absolute control by Ronald R. Rewald, its Chairman, and its collapse are reported in some detail in *Sovereign Life Ins. Co. v. Rewald*, 601 F.Supp. 1489 (D. Hawaii 1985).

The instant case, one of many arising from the collapse of Bishop Baldwin, is a securities fraud suit against many persons employed by the firm. It is proposed as a class action on behalf of investors in the firm.

Before this court are motions to dismiss, or, in the alternative, for summary judgment, brought by ten persons—lawyers, accountants, and a real estate agent—who performed work for Bishop Baldwin. Due to the large number of issues and moving defendants, this court bifurcated its consideration and decision of the motions. Initially, the court heard and decided, under F.R.C.P. 12(b)(6), issues relating to the sufficiency of the pleadings.

Briefing and hearing followed on issues involving matters in the factual record outside the pleadings. These issues are resolved in this decision on the summary judgment aspects of defendants' motions.

*The Defendants*

Each moving defendant, like virtually all other defendants, was listed on the roster of Bishop Baldwin "consultants" in the company's "Directions" brochure. This brochure was extensively used to solicit investments. Using a nautical theme, illustrated by numerous photographs of a modern vessel's navigation room, the brochure suggested that Bishop Baldwin provided direction to the "international community" as a sea captain provides direction to his ship. It consisted of literally dozens of representations about the company's past achievements and present financial activities—all made up out of thin air, with not a grain of truth in them.

Most of the moving defendants were young attorneys largely unknown in the community. Plaintiff alleged, for himself and potential class members, that reading the long list of "consultants" in the brochure helped induce all to invest by seeming assurance that they were dealing with a reputable company backed by some of the oldest names and largest businesses in Hawaii.

The relevant facts as to the individual moving defendants may be summarized as follows:

*Dana Smith*

According to his affidavit, Smith was an outside counsel and director of Bishop Baldwin. Most of his work for the firm involved negotiating workouts with creditors of various sporting goods companies and a printing operation in which Rewald, personally, held interests. He avers that he never drafted the "Directions" promotional brochure or any other document or did anything else that he had any reason to believe aided in soliciting any investor.

Smith states in an affidavit that when retained to incorporate the firm, he was assured that the firm name referred to real people who would be involved in the corporation.

In answer to the allegation in paragraph 10 of the complaint that he participated directly in soliciting the investment of Cecelia McCormick, Smith states that "the only conceivable connection between her investment and me" was that Rewald asked him to obtain Pittsburgh counsel to seek termination of a Mellon Bank trust in her favor.

Also, in Exhibit A to Smith's joinder in the instant motion, which consists of plaintiff's answers to his interrogatories, question 13 asks the basis of the suit against him and the facts alleged in support thereof. Plaintiff's answer is that merely by virtue of his position as a consultant and/or attorney, Smith had a duty to disclose all material facts to the investors.

■ Clearly, performing corporate legal work does not, by itself, create such a duty to investors in the corporation. Nor does director status, per se.

The inquiry then becomes: Did Smith perform any act, or was he involved in the company in any way which would create a duty on his part *to the investors* to conduct a reasonable investigation into the company's affairs to determine how their money was being "invested", and disclose to them whatever he found? Further, is there any genuine dispute as to his role which would require resolution by the factfinder at a trial, or may the court appropriately grant summary judgment?

As discussed *infra*, the magistrate stayed substantive discovery pending class certification of this action. Plaintiff's counsel did, however, review the documents in the hands of the Bishop Baldwin bankruptcy trustee in an effort to produce evidence creating a reasonable inference of liability, in order to make out issues of fact to oppose the instant motions for summary judgment.

From their search, plaintiff's counsel have submitted numerous corporate forms and minutes, such as the annual corporation exhibit filed with the state Department of Regulatory Agencies. There is a bill to the firm reflecting that Smith performed work relating to the issuance of stock certificates and refiling subchapter S. There is a letter to the president of the International Market Place in Waikiki regarding Bishop Baldwin's application for tenancy in the treehouse in a banyan tree there. In

the letter, Smith states that to the best of his knowledge, the company "operates its business in conformance with all applicable laws and regulation." There is Smith's letter to Rewald stating that he is "reviewing your records to ascertain if you have completed all necessary registrations and filings which may be required by governmental agencies for the corporate activity in which you are engaged."

Smith was responsible for filing registrations and other forms with various regulatory agencies. He seemed to believe that the company was not selling securities. It is unclear whether his duties included registering with the SEC.

### Jason G.F. Wong

This defendant is not related to defendant Sunlin L.S. "Sunny" Wong, nominal President of the firm, who pled guilty to criminal charges of fraud arising from the instant facts and has not entered an appearance herein.

Jason Wong's affidavits show that Rewald hired him to establish an office in Taiwan. He "viewed this as an exciting and exceptional career opportunity." Like several of the other outside contractor attorney defendants, he was paid a retainer which began at $1000 monthly and eventually reached $4,000 monthly.

Wong spent most of the period from his retention through the failure of the firm on assignment in Asia, opening the Taiwan, Singapore, Hong Kong, and Jakarta offices and doing research for what was to be the "infamous" *Capital Flight from Hong Kong* "report". The company published this lengthy, vacuous volume, elegantly bound with gold lettering but containing virtually no substantive economic or financial analysis, ostensibly as a project commissioned by the lieutenant governor of Hawaii, to attract capital from Hong Kong to the State of Hawaii. There is no evidence that it was ever used to solicit Bishop Baldwin investors, having apparently been issued the week the company collapsed.

When Rewald visited Taiwan, he and Wong discussed possible uses of the office and possible company projects in Taiwan.

Wong's other work for the firm consisted of writing memoranda on legal problems unrelated to investments, and analyzing tax or other legal consequences of what he was led to believe were potential firm investments, investments that were never made.

Wong turned down the title of vice president of "Far East Operations" because he knew so little about the company.

Like many of the other moving defendants, he himself invested in the firm.

He and defendant Newland questioned defendant Lam's tax opinion, discussed below, and Rewald advised him that the investment accounts covered by the opinion would be closed.

Wong did no securities work and never participated in soliciting investments.

### Ralph D. Black

Black, an outside attorney contractor for Bishop Baldwin, has submitted a factually uncontradicted affidavit which establishes that he neither participated in any offers or sales of securities, nor in any underlying event leading thereto. There is no evidence that he prepared or distributed any materials relating to creation or solicitation of securities sales, nor that he was involved in any activity relating thereto. There is no issue raised as to his knowledge of the fraud or reckless disregard of the possibility thereof. There is no complaint about his actual work, which consisted mostly of matters unrelated to investments, such as pension and tax work, which he undertook for company clients who were referred to him.

Due to plaintiff's counsel's defective service list, Black's counsel was not served with many of the papers in this case, nor was he kept apprised of its progress. He was, therefore, unable to join in defendants' earlier motions to dismiss, which were granted in part. See Exhibit 1.

Black now moves for the relief granted in that decision to the moving defendants. This motion is GRANTED.

### John Ing

Ing, an attorney who worked for Black, had, from all available evidence, no involve-

ment with securities fraud nor did he contribute in any way to plaintiffs' losses. There is no evidence of scienter on his part, nor of any duty to disclose. His affidavit is uncontradicted.

*Leslie K.W.C. Fong*

Fong, like Black, entered a late appearance in this action. He also seeks to have the relief granted in the dismissal decision applied to him. This request is GRANTED.

Like the other attorney defendants, Fong was an outside contractor, with his own clients. He, too, was on a retainer from Rewald which grew from $1000 per month at the beginning to $4000 per month just before the end. Like Jason Wong, he travelled for the firm on assignments unrelated to investments.

Plaintiff, as evidence, submitted an investor questionnaire stating that a certain investor had contact with Fong before investing. However, Fong stated at the hearing on these motions that the investor was his brother's company. The questionnaire indicates that the factors which influenced the company's decision to invest included, *inter alia*, "newsletters sent to my family & Leslie Fong."

■ The questionnaire indicates that the reputation of and people involved in Bishop Baldwin may have influenced Fong's brother's company to invest. Even if one infers that Fong's association with the firm helped induce the investment, without more this does not raise a genuine issue as to Fong's liability for any securities violation or common law tort.

*Karen Koshko*

Karen Koshko, nka Karen Cunningham, was a real estate agent with Bishop Baldwin. She avers that she never participated in sales of securities. She did, however, speak at a seminar for the public on the real estate market in Hawaii.

Plaintiff argues that a reasonable inference can be drawn that she should have realized that her seminar presentation would have the potential to generate investments in the firm.

This, however, is not evidence of participation or assistance in offering or selling securities, misrepresentation or fraudulent acts of any kind, knowledge of fraud, or a role in the company that would impose on her a duty to discover and disclose to the investors material facts about their investments.

*Law applicable to securities claims*

Of course, on a motion for summary judgment the court must view the evidence in a light most favorable to the party opposing the motion, and determine whether the record yields any genuine issue of material fact or whether the moving party is entitled to prevail as a matter of law. *Compton v. Ide*, 732 F.2d 1429, 1434 (9th Cir.1984). *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982). Moreover, the party opposing the motion must present significant probative evidence to support the complaint. *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir.1979). He may not rest on his pleadings. *SEC v. Murphy*, 626 F.2d 633, 640 (9th Cir.1980).

As to those pendent claims for which state law supplies the rule of decision, the standard for summary judgment is similar.[1]

Plaintiff argues that conflicting inferences can be drawn from facts in the record, and that summary judgment is thus unwarranted as to any moving defendant.

Plaintiff characterizes his case as one of non-disclosure on the part of each defendant, and stresses that it cannot be resolved merely by determining which defendants might have directly solicited investments and made affirmative misrepresentations to victims of the fraud. *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Although some defendants did have such type of direct contact, nevertheless the issue here is whether a defendant had a duty

---

1. *Rodriguez v. Nishiki*, 65 Haw. 430, 438, 653 P.2d 1145 (1982); *Beamer v. Nishiki*, 66 Haw. 572, 578, 670 P.2d 1264 (1983).

to disclose material facts to the investors. A defendant's duty or lack thereof, however, must be analyzed under the five-factor test set out in *White v. Abrams,* 495 F.2d 724 (9th Cir.1974), and applied in later Ninth Circuit cases, discussed *infra.*

■ Plaintiff's counsel has stated that the heart of the case is the claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. section 78j, and SEC Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5. Primary liability on these claims may be predicated either upon affirmative misrepresentations, or upon omissions by defendants to state facts material to the transactions at issue while under a duty to disclose those facts to plaintiff. *White v. Abrams, supra.*

■ Scienter is required to make out a violation of section 10(b). *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, 197–199, 96 S.Ct. 1375, 1381, 1382–1383, 47 L.Ed.2d 668 (1976). In this circuit, as in most, the courts hold that reckless disregard of relevant facts suffices for scienter. Knowledge or intent is not required. *Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir. 1984); *Nelson v. Serwold,* 576 F.2d 1332, 1337 (9th Cir.1978).

Plaintiff also sues under section 17(a) of the Securities Act of 1933, 15 U.S.C. section 77q. The Supreme Court has held that in SEC enforcement actions, negligence satisfies the requirements of section 17(a)(2) and (3). *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). The Court continues to reserve decision on whether section 17(a) affords a private remedy. *Herman & McLean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983). In this circuit, a private remedy exists under section 17(a). *Stephenson v. Calpine Conifers II,* 652 F.2d 808, 815 (9th Cir.1981). This holding has been much criticized by the district courts in this circuit. *See* Exhibit i, at 4–5 (collecting cases).

■ In this circuit, the duty to disclose material facts in securities cases is based on the factors set forth in *White v. Abrams, supra.* The five factors for determining whether a duty exists are:

1. The relationship between plaintiff and defendant;

2. Defendant's access to information relative to that of plaintiff;

3. The benefit defendant derived from the relationship with plaintiff;

4. Defendant's awareness of plaintiff's reliance upon defendant for information; and

5. Defendant's activity in initiating the securities transaction.

In *Hochfelder,* the Supreme Court overruled the negligence standard set forth in *White v. Abrams, supra.* 425 U.S. at 193 n. 12, 96 S.Ct. at 1381 n. 12. This circuit's Court of Appeals has stated that the *Hochfelder* Court disapproved the use of the *White v. Abrams* factors. *Ritzau v. Warm Springs West,* 589 F.2d 1370, 1374 (9th Cir.1979).

In other cases decided since *Hochfelder,* however, the Ninth Circuit has continued to apply the "flexible duty" test of *White v. Abrams. Kidwell ex rel. Penfold v. Meikle,* 597 F.2d 1273 (9th Cir.1979); *Stephenson v. Calpine Conifers, supra,* 652 F.2d at 813. There is no indication that the Court disapproved of the use of the *White v. Abrams* factors to determine to whom a defendant owed a duty and under what circumstances, provided the scienter requirement was met. *Penfold, supra,* at 1294; *Stephenson, supra,* at 813 n. 5.

■ If the scienter requirement is met, derivative liability may attach to a defendant as a controlling person, upon a showing of influence in the corporation's regular affairs. *Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir.1984), *citing Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981). A director, such as defendant Smith, is not automatically liable as a controlling person, without such a showing. *Id.*

Here, there is no evidence of control on the part of any moving defendant.

■ Secondary liability may also be predicated on an aiding and abetting theory. This would require that a defendant both possess actual knowledge of the fraud and render substantial assistance in furthering it. *E.g., Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982).

While assuming that aider and abettor liability exists, the Ninth Circuit has expressed doubt about its continuing vitality. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1299 n. 2 (9th Cir.1982); *Admiralty Fund v. Hugh Johnson & Co., supra*, 677 F.2d at 1311 n. 12 (9th Cir.1982). The Supreme Court has continued to hold the issue open. *Herman & MacLean v. Huddleston, supra*, 459 U.S. at 379 n. 5, 103 S.Ct. at 686 n. 5 (1983).

## CONCLUSIONS

■ Applying the five *White v. Abrams* factors, *supra*, first, there was no relationship between the investors and these defendants. The company referred some of the investors to certain attorney defendants on legal matters unrelated to investments. Otherwise, they were strangers.

A reasonable investor might consider the identity of those associated with a company to be highly material to a decision whether to invest in that company. *Hickman v. Groesbeck*, 389 F.Supp. 769 (D. Utah 1974). However, that each moving defendant was listed as a "consultant" in the "Directions" brochure, with or without their knowledge or consent, does not, by itself, create any duty on the part of anyone so listed to those who read the brochure and become investors in the firm.

Second, while the above-named defendants were employed or retained by Bishop Baldwin, so that their access to information was greater than plaintiff's, nevertheless the record conclusively establishes that they were not privy to information about the fraud.

Third, these defendants derived no benefit from any relationship with the investors, because they had none. The only benefit they derived even from their relationship to the firm was that it employed them or paid their fees.

Fourth, there is no indication that these defendants were aware of the investors' reliance on them. There is no showing that the investors relied on them at all. Nor is there any evidence that any of these defendants initiated any securities transaction.

Plaintiff's counsel attach as Exhibit B to their second supplemental memorandum in opposition to summary judgment a decision where they appeared as counsel: *Finch v. Exchange Bank*, No. C 80–4128 TEH (N.D. Cal.1982) (Henderson, J.). That case illustrates that a respected institution, in this instance a bank, has a high level of duty to its customers to disclose material facts, because its customers rely on it and entrust their funds to it. Plaintiff maintains that the Bishop Baldwin firm had a similar duty to its investors. Any duty of the firm does not, per se, however, implicate its employees.

Plaintiff argues that as a director of the company, Smith had a duty to know the purpose and function of his corporation. In support, plaintiff cites *San Francisco—Oklahoma Petroleum Exploration Corp. v. Carstan Oil*, 765 F.2d 962 (10th Cir. 1985), which involved control person liability. Smith was plainly not a controlling person.

Additionally, without a showing that Smith had a duty to the investors, this argument is irrelevant. It fails to take account of the distinction between Smith's duty to the corporation and its stockholders (Rewald and Sunlin Wong) as a director, and his lack of duty to its clients, plaintiff and proposed class members herein.

Smith's duty to the corporation as outside counsel and director is the subject of a separate suit brought by the bankruptcy trustee against him and several other defendants herein. *Graulty v. Smith*, Civil No. 85–2959 (1st Cir.Ct.Hawaii).

■ Smith's status as a director creates no duty to disclose material facts to the

corporation's clients. *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir.1973) (*en banc*) (no primary liability); *Strong v. France*, 474 F.2d 747 (9th Cir.1973) (no aider and abettor liability); *Herm v. Stafford, supra*, (no control person liability).

In *Kidwell v. Meikle*, 597 F.2d 1273, 1296 (9th Cir.1979), the court affirmed summary judgment for a defendant attorney who, as corporate counsel, assisted in an allegedly fraudulent sale of assets. Defendant met three of the five *White v. Abrams* criteria. As corporate counsel, he had a fiduciary responsibility to shareholders. He "virtually controlled access," *id.*, to corporate records. He knew the corporation relied on his judgment. However, his legal fees were the only benefit he received. Although he drafted the sale documents, he had no vote on the board and was held not to have initiated the sale transaction.

Again, in *Van Boeckel v. Weiss*, 1983–84 F.Sec.L.R. paragraph 99,648, at 97,589 (N.D. Cal.1983), a corporate counsel was "presumed to have possessed information about the internal affairs and business practices ... that would have been of considerable interest to investors...." There was no evidence that he had any contact with investors other than responding to complaints from them. Citing *Chiarella v. U.S.*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980), and *White v. Abrams, supra*, the court in *Van Boeckel v. Weiss* found no circumstance creating any duty to disclose. It identified the "critical" factor as "some particular opportunity for profit or other advantage to the non-disclosing defendant as a result of plaintiff's investment." *Id.* at 97,590. It found defendant's fees "far too attentuated" a connection with the investments to create a duty. *Id.*

In the present case, because there is no evidence that the above-named defendants knew of the fraud, solicited investors, or made any direct or indirect representations to investors about the merits of investments with Bishop Baldwin, the argument for finding a duty is even weaker.

Even if plaintiff could prove that Smith might have negligently failed to discover the fraud, or that he might have negligently failed to realize that the company should have registered its "securities" (assuming the investment contracts the firm offered were such) with the SEC or the appropriate state agency, any such evidence would not give rise to any reasonable inference that Smith did or failed to do anything which would render him liable to the investors.

The firm, not the investors, was Smith's client. Even if he should have known (or even if he did know) that the firm might be selling unregistered securities, under the *White v. Abrams* test, he had no duty to disclose the same to the investors.

Smith's case is even stronger than defendant's position in *SEC v. Coffey*, 493 F.2d 1304 (6th Cir.1974), in which the court exonerated a corporate board chairman and a vice-president of securities liability where neither had a "special relationship" with the defrauded plaintiffs. *Id.* at 1315. The court commented that imposing liability upon such defendants would be to dispense with the restrictions on controlling person liability found in section 20 of the 1934 Act, 15 U.S.C. section 78t. Unlike the defendants there, who were responsible for supervising those who made the actual misrepresentations, Smith had no management responsibility.

For the reasons given, the above-named defendants also cannot be liable as aiders and abettors. Even if aider and abettor liability is still viable, no evidence exists to show either that they knew of the primary fraud, or that they knowingly and substantially assisted the violation. Both are required for aider and abettor liability. *Harmsen v. Smith, supra*, 693 F.2d at 943; *Admiralty Fund v. Tabor, supra*, 677 F.2d at 1299; *Mendelsohn v. Capital Underwriters*, 490 F.Supp. 1069, 1079 (N.D. Cal. 1979).

Plaintiff further alleges violations of section 12(2) of the Securities Act of 1933, 15

U.S.C. section 77*l*, which prohibits anyone from making false statements or omitting to state any material fact in connection with the offer or sale of a security. This court holds, *infra*, that this claim is time-barred. However, on substantive grounds, this court would also be obliged to grant these defendants summary judgment.

In this circuit, a "seller" need not be in privity with a buyer, but may be a participant in a sale transaction. The test is whether defendant's actions proximately caused plaintiff's injury. *Admiralty Fund v. Jones*, 677 F.2d 1289, 1294 (9th Cir.1982); *SEC v. Murphy, supra*, 626 F.2d at 650.

There is no significant evidence that the acts of these defendants were substantial factors in causing any sale to any proposed class member. Such evidence is required to defeat a motion for summary judgment. *SEC v. Murphy, supra*, at 640.

The affidavits of Smith, Jason Wong, Black, Ing, Fong, and Koshko are uncontradicted by any document or testimony in the record. They are entitled to summary judgment on the securities counts of the complaint and the same is GRANTED.

There is no evidence that they committed common-law fraud. Summary judgment is GRANTED on this count also.

Their uncontradicted affidavits show that they did not misrepresent anything to the plaintiff or any potential class member. Summary judgment is GRANTED on the negligent misrepresentation count.

Whether they had been negligent or not, under the securities laws they had no duty to plaintiffs. Their common-law duty was no broader. They did not do anything negligent respecting plaintiffs.

There is no evidence that by virtue of their role in the firm or any act they performed during their employment, they had any duty to disclose to plaintiffs what Rewald, the head of the client firm, may have said to them or to others.

Merely being listed as a "consultant" in the "Directions" brochure did not render them insurers of all statements contained therein nor manifest a ratification thereof. Ratification requires knowledge of the relevant facts. *Prather v. Colorado Oil & Gas Corp.*, 218 Kan. 111, 542 P.2d 297, 303. They are GRANTED summary judgment on the negligence count.

Likewise, there is no evidence to support the professional negligence claim, under Rest.2d, Torts, section 552, that they supplied plaintiffs with false information to guide them in transacting business.

There is no evidence of any such malpractice by any of these attorney defendants.

Regardless of whether or not Smith's advice to the firm, such as that he believed it had completed all required securities registrations, was correct, reasonable advice, there is nothing in the record to create any inference that, as alleged in paragraph 108 of the complaint, he or any of the others was retained by the firm to provide legal services directly to plaintiffs.

An attorney can be liable for malpractice only to his client, or possibly to a third party for whose benefit he undertakes to provide services, such as the beneficiary of a will. *Goodman v. Kennedy*, 18 Cal.3d 335, 134 Cal.Rptr. 375, 556 P.2d 737 (1976). Unless a lawyer knew or should have known that his advice would be transmitted to and relied on by investors in the client firm, or unless the investors were intended beneficiaries of the advice, the lawyer has no duty to them, although it is obviously foreseeable that someone may purchase the securities. *Id.*, 134 Cal.Rptr. at 380, 556 P.2d at 742. Smith's advice was to the firm, not to the investors.

Smith, Wong, Black, Ing, and Fong are GRANTED summary judgment on the malpractice count.

There is no evidence that plaintiffs are entitled to recover from the real estate recovery fund maintained by the Real Estate Commission of Hawaii, pursuant to H.R.S. section 467–16, for any act of fraud, misrepresentation, or deceit by Koshko, a real estate sales agent. Summary judgment is GRANTED Koshko on this count.

Finally, individuals cannot be liable for unfair and deceptive trade practices

committed by their employing corporation unless they authorized, ordered, or performed the acts constituting the violation. H.R.S. § 480–17. There is no evidence that the five attorney defendants named sold anything. There is no evidence that Koshko participated in any violations of this chapter. Summary judgment is GRANTED to the above on this count.

Thus, Smith, Jason Wong, Black, Ing, Fong, and Koshko are GRANTED summary judgment on the entire complaint.

*Gerald N.Y.C. Lam*

Lam was another outside attorney retained by Bishop, Baldwin. He avers that he did not participate in the preparation of the "Directions" brochure and did not see it, with his name listed as a consultant, until August 1983, after the collapse, nor did he solicit any investments. Plaintiff alleges, however, that Lam negligently wrote a tax opinion letter which the firm used to solicit investors.

In paragraph 114 of the complaint, plaintiff mixes together two separate allegations. The first is that the Lam letter negligently advised potential investors that the investment accounts offered by Bishop Baldwin were FDIC-insured to $150,000, that the firm was audited by the SEC, that the accounts earned an average of 20% annually, and that the funds were prudently invested.

The letter, addressed to Rewald, purports to give tax advice only as to hypothetical assumptions given Lam by Rewald. It states that Rewald has told the writer that the firm accepts money from depositors and invests it. Investors may choose to withdraw the interest earned on their accounts or reinvest it. If they reinvest it, there are specified tax consequences. If these facts change, the opinion changes.

However, the tenor of the letter is not that of a lawyer's opinion letter. Intermingled with the tax advice are the assertions mentioned above regarding the company's business. These assertions have nothing to do with tax law. The tone of the letter is such as to create a reasonable inference that the writer knew or recklessly disregarded the possibility that it might be used to make representations to potential investors as to the merits of investing with the company. The letter ends with the statement: "It is the continuing intent and effort of the corporation to continually [sic] update its compliance with securities regulations and mandates."

The second allegation in this count is that the tax advice was negligent. This is, at the least, a colorable claim. The advice was that an investor's 20% guaranteed annual interest on a Bishop Baldwin investment account, if rolled over and reinvested in the account, would not be treated as income and would not be taxed until withdrawn. This advice appears clearly erroneous. It ignores the modern doctrine of constructive receipt, I.R.C. § 451; Rev.Rul. 66–44, 66–1 C.B. 94 (1966).

Plaintiff argues that even though Lam was advising the firm, not the investors, he had a duty to the investors because it was foreseeable that the firm would use the opinion letter in making representations to potential investors, and that investors would rely on the advice. *Goodman v. Kennedy, supra,* 556 P.2d at 742.

Lam responds that the complaint and the letter hint at no facts creating a duty on the part of an attorney giving advice to investigate the truth of the facts the client has given him. The lawyer's duty is merely to render an opinion on the legal consequences of those facts.

In support of this contention, Lam cites *Stokes v. Lokken,* 644 F.2d 779 (8th Cir. 1981), in which the court affirmed a summary judgment for an attorney who erroneously advised a corporation that certain sales did not involve securities.

In that case, however, the advice was not clearly erroneous when given. The securities issue was decided by a court after the advice was rendered. The defendant had reasonable grounds to rely on the facts supplied by the client. His opinion letter stressed that the question was arguable and that substantial liability would result if the conclusion was incorrect. Also, the defendant had no reason to suspect that his

letter would ultimately be used indirectly to attract investments.

Lam states in an affidavit that he prepared the letter at Rewald's request as an explanation of the tax treatment he planned to give his own investment. He never intended it to be read by anyone other than Rewald, and he was never advised that it would be disseminated to potential investors.

■ The tenor of the letter, however, suffices to raise issues of material fact as to whether Lam was at least reckless in rendering the tax advice that he gave and in making the factual statements about the treatment of investments that were contained in the letter, whether it was reasonably foreseeable that investors would rely on this advice and whether Lam was aware that it would be used in soliciting investments. *Sharp v. Coopers and Lybrand,* 457 F.Supp. 879 (E.D.Pa.1978) (misstatements in tax opinion may violate Rule 10b–5 where author aware it is to be used in soliciting investments).

The record is replete with affidavits from potential class members stating that the Lam letter influenced their decision to invest. Lam's motion for summary judgment is DENIED IN PART, without prejudice.

■ However, Rule 10b–5 liability is determined of the date of plaintiff's last investment. *Stephenson v. Calpine Conifers, supra,* 652 F.2d at 813. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (no 10b–5 liability unless representation at issue was made "in connection with" purchase or sale of security).

Thus, Lam is entitled, as a matter of law, to judgment on the section 10(b) claim against any potential class member who invested before December 13, 1982, and summary judgment thereon is GRANTED.

### D. Alden "Dan" Newland

Newland was retained as an independent attorney to provide tax research, estate planning, and consultation services as requested.

He avers that he never knowingly drafted any part of any document which solicited investors, nor did anything else which he had any reason to believe would encourage any person to invest.

He had no reason to believe that any of the names in the firm title were fictitious.

He questioned the correctness of the Lam tax opinion and advised retaining mainland counsel for a second opinion. In response, Rewald wrote a memorandum stating that the investment account in question would be closed. Newland wrote a letter to the state Department of Commerce and Consumer Affairs informing them of this action. He states that he had no reason to believe that the funds would not be returned or reinvested.

Many of the trustee's documents submitted by plaintiffs are memoranda from Newland to Rewald.

One series of memoranda might seem to contradict Newland's averment that none of his work related to the creation, solicitation, offering, or sale of securities. These documents describe Newland's discussions in Hawaii and Japan with Japanese businessman Toshinori Miura, who was interested in investing in the company.

Newland knew so little about the company that he wrote to Rewald that he could not answer some of Miura's questions: "... I had to explain how our company works as far as most of the knowledge going through and controlled by Ron Rewald ... I loosely referred to the fact that we get involved in various projects and mentioned the possibility of the airline to the Cook Islands."

Miura, however, did not ultimately invest.

Barely two weeks before the company collapsed, Newland wrote a memorandum to Rewald which reveals the extent to which Rewald apparently kept the entire company in the dark about its true nature and activities:

"2. It appears that no one on the staff that I know or who have [*sic*]

talked with me knows how the money is invested.

3. Many of the people on the staff that I have talked with have expressed concern that none of the activities that they are involved in are profitable....

4. ... There is a nagging concern that the firm is not producing the kind of profitability that would sustain the high earnings on the fund."

■ There is evidence that Newland spoke frequently on behalf of Bishop Baldwin to meetings of potential investors. Other documents in the custody of the bankruptcy trustee refer to possible investment-related contact between Newland and investors. It cannot be said beyond a reasonable doubt that Newland did not solicit investments or that he committed no securities violations.

As noted, the standard of care for securities fraud liability in this circuit is one of recklessness. *Burgess v. Premier Corp., supra; Nelson v. Serwold, supra.* Knowledge of the fraud is not required. It cannot be said as a matter of law that Newland had no relationship with investors nor any duty to them. Nor can it be said as a matter of law that he could not be liable for common law fraud, negligence, or negligent misrepresentation.

As to the count charging conspiracy to violate the securities laws, this court is mindful of the statement in *Finch v. Exchange Bank, supra:* "Although we are tempted to agree with defendants that there is no evidence to support such an allegation [of conspiracy], we note that,

> In a conspiracy case, agreement is rarely out in the open, and proof of conscious complicity may depend upon the careful marshalling of circumstantial evidence and the opportunity to cross-examine hostile witnesses."

*Ferguson v. Omnimedial, Inc.,* 469 F.2d 194, 198 (1st Cir.1972).

■ This court cannot now state that the evidence before it establishes, as a matter of law, that the trier of fact could not possibly find any liability on Newland's part for conspiracy.

■ However, Newland is entitled to and is GRANTED summary judgment on the malpractice count. The record contains no suggestion that he was retained by the firm to render legal services directly to class members, nor that he negligently rendered any incorrect legal advice to any client.

■ Until an amended complaint is filed pursuant to this court's dismissal decision, Bush is the sole remaining named plaintiff. There is no evidence that Bush relied on anything that Newland did or said. Thus, Newland is GRANTED summary judgment on the entire complaint as against plaintiff Bush.

Newland's motion for summary judgment on the remaining counts of the complaint is DENIED, without prejudice.

*William E. Jolly*

■ Jolly, another outside counsel to Bishop, Baldwin, apparently was the firm's sales agent on the Kona coast of the island of Hawaii. Fact issues exist as to what representations he may have made to investors, and his state of mind regarding knowledge of the fraud or reckless disregard of facts which might reasonably have led him to discover it.

Under *White v. Abrams, supra,* and progeny, the critical factor in determining duty to disclose is the opportunity for some special benefit to defendant as a result of plaintiff's investment. It has not been established that Jolly did not fulfill this criterion, so that fact issues remain on this matter also.

Besides joining in the motion to dismiss the RICO count of the complaint, Jolly has moved for partial summary judgment on the issue of whether he had any duty toward named plaintiff Bush. He avers that he did not and the record contains no suggestion that he had. Only that motion is GRANTED. Construing his counsel's oral motion at hearing as a motion for summary judgment upon the entire complaint, the motion is otherwise DENIED, without prejudice.

*Daniel Clement*

■ Clement was another outside counsel to the firm. There is evidence in the record that he brought clients into the company. Relevant issues of fact exist as to his role in the company, his relationship to the investors, and his state of mind.

Clement's oral joinder in the *motions to dismiss* is GRANTED. His oral motion for summary judgment is DENIED, without prejudice.

*Procedural objections to summary judgment*

Plaintiff raises several procedural objections to summary judgment for any defendant.

First, under the earlier decision on motions to dismiss, the securities fraud counts of the complaint have been dismissed without prejudice for failure to plead with particularity under Rule 9(b). Plaintiff has not yet refiled the complaint. He argues that no summary judgment can be rendered thereon because, as a technical matter, the complaint is not now before the court.

Plaintiff cites 6 Moore, *Federal Practice*, paragraph 56.10, for the proposition that where an amended complaint is to be filed, there should be no summary judgment. However, this passage actually refers to cases where it appears that evidence may exist to support a reframed complaint, as where facts which would justify a revised pleading are submitted by affidavit on a motion for summary judgment.

■ The dismissal for lack of particularity in pleading was explicitly subject to the instant decision on the factual sufficiency of the evidence. The decision on dismissal provided that plaintiff be permitted to refile a third amended complaint within 30 days after decision on the instant summary judgment motions. Thus, while dismissing certain counts of the complaint without prejudice, the court retained jurisdiction for the purpose of deciding the remaining aspects of the dismissal and summary judgment motions.

Plaintiff's counsel has had every opportunity to provide affidavits, documents, or other evidence of facts which raise genuine issues precluding summary judgment. Under revised F.R.C.P. 11, possession of facts creating at least a colorable claim is required before filing suit. If plaintiff cannot present any such facts, an amended pleading would be futile.

The order allowing plaintiff to replead with particularity is mooted insofar as summary judgment is granted on those claims. To that extent, the previous order is vacated. *Lien Ho Hsing Steel Enterprise Co. v. Weihtag,* 738 F.2d 1455, 1460 (9th Cir. 1984).

Second, plaintiff notes that summary judgment would not bind any plaintiff yet unnamed.

■ However, where defendants seek summary judgment knowing of the possibility that other plaintiffs will enter the case and not be bound thereby, and where defendants are willing to settle for the benefits of *stare decisis* rather than await those of *res judicata,* it is not for plaintiff or the court to deter them from assuming that risk. *Wright v. Schock,* 742 F.2d 541 (9th Cir.1984).

Third, citing *Wright v. Schock, supra,* plaintiff argues that summary judgment is unwarranted before class certification. However, in that case the court actually affirmed a grant of summary judgment as to certain defendants in a securities fraud case, stating, *id.* at 545–546:

Neither Fed.R.Civ.P. 23 nor due process necessarily requires that the district court rule on class certification before granting or denying a motion for summary judgment. Rule 23 clearly favors early determination of the class issue, but where considerations of fairness and economy dictate otherwise, and where the defendants consent to the procedure, it is within the discretion of the district court to decide the motion for summary judgment first.

Plaintiff's contention that *Wright v. Schock* actually favors his position is espe-

cially difficult to sustain because counsel representing plaintiff herein also argued and lost that case. Counsel contended there, as here, that "they could have better communicated with potential class members and perhaps gathered sufficient evidence to overcome the summary judgment motion if the class had been certified first." *Id.*, at 545.

The *Wright* court answered that argument: "It appears, however, that the Wrights were free to communicate with potential class members and that they did communicate. The district court, at least, did not restrict them...." *Id.* The same is true here, as it has been since suit was filed, August 8, 1984, over a year ago.

Plaintiff's counsel propose that a schedule be adopted for this case consistent with their own past class action securities fraud cases, and with the general suggestions of the *Manual for Complex Litigation,* which the magistrate ordered used in this case. They propose setting an expedited date for the refiling of the complaint, followed by any motions to dismiss, then proceeding immediately to discovery, briefing, and argument on the class certification issue. All parties would be required to respond to outstanding class-related discovery before the class certification hearing. Only after the class certification decision would summary judgment motions follow.

█ However, the dispositive motions before the court are not only permitted by the status conference order but are consistent with sections 1.30, 1.40, and 2.11 of the *Manual.* Moreover, *Wright v. Schock, supra,* validates the hearing, before class certification, of summary judgment motions where it is clear that the moving defendant should never have been in the case.

Finally, plaintiff contends that he should be allowed to conduct discovery before

summary judgment motions are entertained, because this is a non-disclosure case. The relevant facts giving rise to liability, if any, are in defendants' possession. Thus, plaintiff urges, it would be error not to grant a continuance for discovery.

Plaintiff's counsel previously so argued, without success, in *Wright v. Schock, supra.* In the instant case, the magistrate entered a status conference order which did not stay summary judgment motions until class certification, but did stay substantive discovery. *Plaintiff specifically so requested, knowing that dispositive motions were being filed.*

█ Plaintiff is estopped to argue the unfairness of a stay requested by his own counsel. Moreover, counsel had eight months from the date suit was filed to conduct discovery. Additionally, over a year had passed from the time Bishop Baldwin failed until this suit was filed. During this time, counsel could have conducted informal discovery and investigation before bringing suit.[2]

The mandate of revised Rule 11 is that a plaintiff's counsel must make a reasonable investigation of the facts and law underlying the proposed claim before filing suit. Plaintiff need not be able to prove his case at this stage, but he must have, at a minimum, a colorable claim.

Additionally, circumstances alleged to constitute fraud must, under Rule 9(b), be pled with particularity. Thus, it is especially true in such a case as this that plaintiff must know his claim before he files. Plaintiff cannot embark on a fishing expedition and expect defendants to supply him with a case by means of admissions in deposition and interrogatories. *First National Bank of Arizona v. Cities Service,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (where complaint unsupported by evidence, summary judgment appropriate

---

**2.** Plaintiff points out that the class certification motion was stayed at defendants' request to allow six months of class-related discovery. To date, no moving defendant has supplied any discovery to plaintiff. "Plaintiff respectfully suggests that what is sauce for the goose, is

sauce for the gander." Second supplemental memorandum in opposition to summary judgment, at 19.

As a general proposition, this is unexceptionable; but it is inapplicable to the issues before the court.

even though facts were complex, evidence, if any, was in defendant's hands, and motivation was at issue). All that plaintiff can muster regarding many defendants in this case is speculation: because they worked at Bishop Baldwin and most were listed as consultants in the company's "Directions" promotional brochure, they might have been in on the fraud.

*Section 12(2) time-bar*

As previously discussed, in count 2, plaintiff alleges violations of section 12(2) of the Securities Act. Section 13 of the Act, 15 U.S.C. section 77m, limits the period for bringing suit under section 12(2) to, *inter alia,* "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence...."

On Friday evening, July 29, 1983, a local television station broke the story that Bishop Baldwin was being investigated for fraud by various federal and state agencies. The following week, the company closed its doors and was placed in involuntary bankruptcy.

Defendant Lam has submitted, as exhibits B–D to his original moving papers, copies of newspaper articles about the collapse of Bishop Baldwin and the accompanying charges that the company was a huge investment fraud. These articles, dated August 1–4, 1983, appeared over a year before this action was filed.

■ This court holds that the section 12(2) claim in count 2 of the second amended class action complaint is time-barred. Any proposed class member must be charged with at least constructive knowledge of the fraud from the time that the news of it was publicly disseminated. The publicity also forecloses any fraudulent concealment argument. There can be no factual dispute that this suit was filed over a year after the false statements and omissions charged herein should have been discovered by the exercise of reasonable diligence.

In addition, Bush, who is presently the sole remaining plaintiff, actually filed suit in state court over a year before beginning this action. The state suit charged defendant Rewald with conduct similar to that alleged here.

■ The section 12(2) claim is, therefore, also time-barred specifically as to Bush because, in light of his state court suit, there is no doubt that he brought the claim more than a year after he discovered the false statements and omissions.

Another putative class action arising from the same facts as these was filed in this court June 30, 1984, and is currently pending. *Kunimune v. Wong,* Civil No. 84–0832.

If a class should later be certified in that action, its filing may be held to have tolled the running of the limitation period. In that event, if this suit then remains viable, plaintiff may apply to this court for appropriate relief.

*Count 5 of the complaint (RICO)*

Count 5 of the second amended class action complaint charges violations by defendants of the Racketeer Influenced and Corrupt Organizations Act (RICO). This court originally dismissed this count upon the authority of its decision in *McCarthy v. Pacific Loan,* 600 F.Supp. 137 (D. Hawaii 1984). Count 5 was reinstated after the U.S. Supreme Court overruled *McCarthy* in *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Briefing and argument followed on the effect of the new decision upon this claim. The defendants now move anew to dismiss Count 5 or, in the alternative, for summary judgment thereon. This court analyzes the RICO claim as follows:

■ First, predicate acts under RICO constitute fraud, be it securities, wire, or mail fraud. Therefore, as this court has previously held regarding the securities fraud counts of the complaint, the RICO claim must, at the very least, be dismissed without prejudice under Rule 9(b) for lack of particularity. *Bennett v. E.F. Hutton,* 597 F.Supp. 1547, 1560 (N.D. Ohio 1984). Neither Count 5 nor the second amended class action complaint as a whole describes specific fraudulent acts or omissions on the part of each defendant.

Certain defendants also argue that this count does not allege that defendants violated 18 U.S.C. § 1962, which is the substantive section. Thus, it fails to state a cause of action under section 1964. However, although the complaint does not mention section 1962, it does allege that defendants participated in an enterprise through a pattern of racketeering activity, which is all that section 1962(c) requires.

Next, in a previous oral ruling from the bench, this court previously granted defendants Smith and Jason Wong summary judgment on the other counts of the complaint. These defendants now argue that this means they have been held not to have committed any underlying predicate act, so that they must receive summary judgment on the RICO count also. *Greenblatt v. Drexel Burnham Lambert*, 763 F.2d 1352 (11th Cir.1985).

Plaintiff points out that summary judgment does not automatically follow, because predicate acts sufficient to support the RICO count of the complaint could include acts other than those charged elsewhere in the complaint, i.e. securities fraud. Nevertheless, argues plaintiff, even though Smith and Wong received summary judgment on the issue of whether they committed securities fraud, wire fraud and mail fraud, however, could also be predicate acts.

This argument avails plaintiff nothing. There is no evidence of any such acts by Smith or Wong. Plaintiff has made out no issue of fact thereon. Thus, summary judgment for these two defendants will be GRANTED on the RICO count as well.

Finally, defendants argue that the RICO claim is time-barred. Since RICO does not contain a statute of limitations, state law provides the limitation period and the most closely analogous state statute of limitations will apply. *Compton v. Ide, supra,* 732 F.2d at 1433 (9th Cir.1984). In *Compton,* the court found that the most analogous limitation period in California was three years, for civil actions based on statute. *Cal.Code Civ.Proc.* section 338.

The most closely analogous Hawaii statute is H.R.S. section 657–11. This section covers actions based upon a federal statute imposing a civil penalty, liquidated damages, or a new liability, or enlarging any existing liability. By its terms, it applies to the RICO statute.

Plaintiff, by its Second supplemental memorandum in opposition to summary judgment, at 62, appears to concede the constitutionality of this section. *See Lai v. City and County of Honolulu,* 575 F.Supp. 1510 (D. Hawaii 1983), *rev'd on other gds.* 749 F.2d 588 (9th Cir.1984).

Citing *Eisenberg v. Gagnon,* 564 F.Supp. 1347 (E.D.Pa.1983), however, plaintiff argues that the six-year common law fraud limitation period should apply because a federal court would apply the longest feasible period. In that case, the Pennsylvania common law fraud statute was the most closely analogous state law to the RICO statute. *Id.* at 1354. In Hawaii, however, H.R.S. section 657–11 specifically applies to such federal statutes as this and is, therefore, the more closely analogous state statute of limitation.

This court holds that plaintiff's RICO claim is time-barred. Count 5 of the second amended class action complaint, is, accordingly, DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.

*Final Judgment*

Defendant Smith, who has now won summary judgment on all counts of the complaint, seeks entry of a final judgment under Rule 54(b) on the ground that there is no just reason for delay. Several other defendants have orally joined in this motion. Plaintiff argues, at length, that because the final judgment will not preclude as yet unnamed members of the proposed class of investors from claiming against Smith, he should not have the benefit of final judgment. That risk, as previously discussed, is Smith's to take. *Wright v. Schock, supra.* Final judgment, as prayed for, is GRANTED.

Final judgment will be certified upon submission by each prevailing defendant of an appropriate certificate under Rule 54(b).

*Summary*

The portion of this court's July 3, 1985, decision on motions to dismiss in which it was ordered that certain counts of the second amended class action complaint be dismissed, without prejudice, and in which defendants were allowed to replead their claims with particularity, Exhibit 1, *supra,* is VACATED as to those claims and defendants as to whom summary judgment is granted herein.

The motions of defendants Dana Smith, Jason G.F. Wong, Ralph D. Black, John Ing, Leslie K.W.C. Fong, and Karen Koshko, nka Karen Cunningham, to dismiss, or, in the alternative, for summary judgment, are GRANTED.

The motions of defendants D. Alden Newland, Gerald N.Y.C. Lam, William E. Jolly, and Daniel Clement to dismiss, or, in the alternative, for summary judgment, are DENIED, without prejudice, except that Newland's motion is GRANTED as to count 14 (malpractice), and as to plaintiff Bush.

Lam's motion is GRANTED as to plaintiff Bush and all other potential class members who invested no funds after December 13, 1982.

Jolly's motion is GRANTED as to plaintiff Bush.

Clement's motion is GRANTED insofar as it seeks the relief granted to other moving defendants in this court's decision of July 3, 1985.

The motions of all defendants are GRANTED as to the claim in count 2, under section 12(2) of the Securities Act, and as to Count 5 (RICO).

The section 12(2) claim of count 2 and all of count 5 (RICO) are DISMISSED, with prejudice, as to all defendants.

Final judgment under F.R.C.P. 54(b) will be certified as to Smith, Jason Wong, Black, Ing, Fong, and Koshko upon presentation by each to this court of an appropriate certificate.

IT IS SO ORDERED.

## EXHIBIT 1

## DECISION ON DEFENDANTS' MOTIONS TO DISMISS

Proceeding in order through the counts of plaintiffs' second amended, class action, complaint, this court decides:

1. Section 13 of the Securities Act of 1933, 15 U.S.C. section 77m, limits suits under section 12(1), 15 U.S.C. § 77*l* (1), to one year after the violation occurred. This is an absolute limit. Plaintiffs concede that their section 12(1) claim under the Act, *id.,* is time-barred. Paragraph 35 of the complaint pleads violations occurring through July 1983. The suit was filed August 8, 1984. This count is therefore *Dismissed with Prejudice,* under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

2. Claims under section 12(2) of the Securities Act are time-barred as to some allegedly class-action plaintiffs because they were brought more than three years after those plaintiffs invested. Due to the lack of specificity in the complaint, it cannot be determined which plaintiffs' claims might still be alive.

Moreover, the Bishop Baldwin Rewald Dillingham & Wong Investors' Association has no standing to sue. It does not allege that it lost any money or suffered any other damage. Absent this, an association has standing to sue on behalf of its members for declaratory or injunctive relief, but has no standing to sue for damages. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The Association is DISMISSED as a plaintiff in this case *on all counts.* The case cited by plaintiffs at oral argument, *Haas v. Pittsburgh National Bank,* 526 F.2d 1083 (3d Cir.1975), is not in point.

Bush thus remains as the only plaintiff. It is questionable whether he is time-barred on this count because it is alleged that he invested "in or about 1981, and thereafter...." Paragraph 23. Upon such loose allegation, he appears to be time-barred. This count is DISMISSED, without prejudice, for lack of particularity under Rule 9(b).

The 12(2) count is DISMISSED, without prejudice, for lack of Rule 9(b) particularity, because the complaint makes no specific reference to the acts or omissions of moving defendants. In the Ninth Circuit, time, place, and content of false representations must be pled so that defendants will have notice of the claims against them and may frame an adequate response. *Teamsters Local 427 v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir.1981) (*aff'g* Pence, J.); *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 867 (9th Cir.1977).

Plaintiffs, here, have alleged that Smith was a director of Bishop Baldwin, drafted the "Directions" promotional brochure, and "participated" in soliciting the investment of class member Cecelia McCormick (paragraph 10). They have also alleged that Lam wrote the tax opinion letter which the firm used to solicit investors (paragraph 114). Otherwise, plaintiffs have failed to plead *facts* showing defendants' connection to the objectionable transactions, their substantial assistance in the fraud, or their knowing or negligent ratification of fraudulent practices. This is required under applicable precedent to sustain the causation requirement for private securities transactions. *Harmsen v. Smith*, 693 F.2d 932, 944 (9th Cir.1982); *S.E.C. v. Murphy*, 626 F.2d 633, 648 (9th Cir.1980); *Strong v. France*, 474 F.2d 747, 752 (9th Cir.1973); *see Hudson v. Capital Management International*, 565 F.Supp. 615, 621–25 (N.D. Cal.1983).

Plaintiffs' argument that in class action securities cases they need not plead fraud with particularity because defendants possess the facts is without merit. *See Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973) and *Elster v. Alexander*, 75 F.R.D. 458, 462 (N.D. Ga.1977).

Plaintiffs' first amended complaint differed from the original complaint by adding a twentieth count for unfair business practices. Magistrate Tokairin dismissed that amended complaint without prejudice for failure to plead fraud with particularity.

Because plaintiffs have been given a chance to amend their complaint and plead with the particularity demanded by Rule 9(b), this second amended complaint could have been dismissed with prejudice. However, the eleventh-hour documents that were filed before the hearing on this motion, along with a previously filed declaration of plaintiff Nicoll, might possibly provide some colorable factual support for plaintiffs' claims as to some of the defendants. These claims are DISMISSED, without prejudice. Plaintiffs are given leave to amend within 30 days after this court's decision is filed on the upcoming motions for summary judgment.

The section 17(a), 15 U.S.C. § 77q, claim for rescission or damages is also part of the second claim for relief. The Rule 9(b) analysis applies to it also. This claim is also DISMISSED, without prejudice, as set out above.

In this circuit, it has been held that § 17(a) affords a private right of action. *Stephenson v. Calpine Conifers II*, 652 F.2d 808, 815 (9th Cir.1981). Although the district courts in *Pynchon v. Bursell*, E.D. Cal. Civil S–82–615 LKK, 10/19/84 (Karlton, C.J.), slip op. at 50, as well as *Bruns v. Ledbetter*, 583 F.Supp. 1050, 1052–54 (S.D. Cal.1984) (Turrentine, J.), and *Hudson, supra*, have criticized or refused to follow *Stephenson v. Calpine Conifers II, supra*, this court is bound by the law of its circuit. *Hasbrouck v. Texaco*, 663 F.2d 930, 933 (9th Cir.1981).

3. Plaintiffs' claim under section 10(b) and Rule 10b–5, *supra*, has not been pled with particularity and is DISMISSED, without prejudice, as to all defendants.

4. Rule 9(b) applies to this count alleging conspiracy to commit securities fraud. This court concludes that plaintiffs alleged conspiracy in order to bypass *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir.1973), where the court held that a plaintiff could not represent a class suing multiple defendants where the plaintiff had only been injured by one of those defendants. The court noted that there was no allegation of concerted activity by the defendants. *Id.* at 470.

5. Plaintiffs concede that this court does not recognize a civil RICO claim that fails to plead that the defendant has previously been convicted of a "predicate" act. *McCarthy v. Pacific Loan*, 600 F.Supp. 137 (D. Hawaii 1984). Until and unless the Supreme Court reverses *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), this court will continue to apply its own decision and, therefore, DISMISSES this count with prejudice, under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

6. Plaintiffs' common-law fraud count suffers from the same 9(b) pleading deficiency as the statutory fraud counts and is DISMISSED, without prejudice.

7. Since the common-law negligent misrepresentation count need not be pled with particularity under Rule 9(b), defendants' motion to dismiss is DENIED.

8. Plaintiffs' breach of contract count alleges that the defendants entered into investment contracts with plaintiffs "directly, or indirectly, through BBRD&W." Paragraph 81. They do not, however, plead facts showing that moving defendants were parties to any contract.

Plaintiffs allege that Exh. I to the complaint is a contract between plaintiffs and defendants. This exhibit is nothing but a transmittal letter to prospective investors stating that a prospectus is enclosed. It is signed by Russell D.C. Kim. This court infers that plaintiffs meant Exh. J: letters from BBRD & W acknowledging payments by various investors.

Even if it were assumed that these are contracts, they are only between the investors and the firm, or possibly its principals, Rewald and Wong. Moving defendants are not alleged to be principals, although Smith is alleged to have served as a director.

Plaintiffs' contract claim is DISMISSED, *with prejudice,* for failure to state a claim.

9. For the above reasons, plaintiffs' claim for breach of the covenant of good faith and fair dealing does not state a cause of action and is therefore DISMISSED, with prejudice. By its own terms, the covenant arose when defendants entered into the alleged contracts.

10. As with plaintiffs' seventh claim, *supra,* plaintiffs' common-law negligence count need not be pled with particularity under Rule 9(b); therefore, defendants' motion to dismiss this count is DENIED.

11. Plaintiffs' conversion claim is DISMISSED with prejudice because the alleged chain of causation is too remote from moving defendants. Plaintiffs do not allege that they entrusted their investments to moving defendants, or that those defendants exercised control over funds in the firm's accounts (*see* paragraph 95); rather, the allegations show that plaintiffs entrusted their money to the firm, which then paid defendants' salaries and fees.

12. Plaintiffs admit there is no private right of action under the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 *et seq., Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), and do not oppose dismissal of this claim. This claim is DISMISSED with prejudice.

13. Plaintiffs' professional negligence count under Rest.2d, Torts, section 552, properly pleads that defendants supplied plaintiffs with false information to guide plaintiffs in transacting business. On its face, therefore, defendants' motion to dismiss is DENIED.

14. Plaintiffs' malpractice count is sufficiently set out so as to avoid dismissal. In paragraph 108, plaintiffs claim that defendants were retained and paid by the

firm "to render various legal services and provide legal advice directly to class members." While from the undisputed evidence now before this court the claim appears nonsensical, this court cannot look outside the pleadings to decide the instant motion.

In paragraph 110, plaintiffs plead that they were the intended and foreseeable beneficiaries of the attorney and accountant defendants' services, and that they were therefore within the scope of the defendants' duty of care.

The only advice that plaintiffs complain defendants gave them, paragraph 111, was to purchase Bishop Baldwin securities. This does not even seem like legal advice, but rather investment advice. It would seem that the statutory and common-law fraud claims, *supra,* more properly apply to such alleged advice by defendants to plaintiffs.

Nonetheless, reading the complaint and drawing all inferences from facts pled therein in the light most favorable to plaintiffs, as the court must (*Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Guiliani v. Chuck,* 1 H.A. 379, 383 (1980)), it properly alleges that defendants gave negligent legal advice directly to plaintiffs, which created a duty to plaintiffs to correct the advice before damage ensued. Defendants' motion to dismiss this count is DENIED.

15. As to defendant Lam, plaintiffs allege that he negligently wrote a tax opinion letter that the firm used to solicit investors.

Lam has not moved for dismissal of this count, but explicitly reserves the right to do so. At this time, there is no motion thereon before this court.

16. Plaintiffs' first state securities law claim, for selling unregistered, non-exempt securities in violation of H.R.S. § 485-8, is time-barred as to some plaintiffs by the two-year statute of limitations, H.R.S. § 485-20(a). Since some investments may not be so barred, this claim is DISMISSED, without prejudice.

17. Plaintiffs' second state securities fraud count alleges violation of all seven of the subsections of H.R.S. § 485-25. Again, this is time-barred by the two-year limitation period as to some plaintiffs and is too general. It, too, is DISMISSED, without prejudice.

18. Besides being too general, the investment advisor count fails to state a claim because it does not allege that defendants "receive[d] any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale...." H.R.S. § 485-25(b).

Also, this court notes that an investment advisor does not include "a lawyer ... whose performance of these services is solely incidental to the practice of his profession," H.R.S. § 485-1(6)(B). Plaintiffs have not alleged any specific extralegal function on anybody's part except Smith, an officer and director, and even Smith is not alleged to have received consideration for giving investment advice.

Plaintiffs state in their first memorandum in opposition, at 48, that they will introduce declarations of class members that defendant Lam advised them concerning investments. This statement is unsupported by affidavit as required by L.R. 220-7. This count is DISMISSED with prejudice.

19. These defendants have not moved on the real estate recovery fund count.

20. Finally, plaintiffs contend that defendants engaged in unfair competition and unfair or deceptive trade practices as defined in H.R.S. § 480-2. Under that section, plaintiffs must make "allegations sufficient to show either that the defendants are 'merchants' or that the suit would be in the public interest." *Cunha v. Ward Foods,* 545 F.Supp. 94, 102 (D. Hawaii 1982) (King, J.), *construing* H.R.S. 480-13.

While defendants argue that they sold nothing to anyone, this court at this time is only considering the effect of plaintiffs' *pleadings.* Theoretically, the suit could appear to be in the public interest. *Cunha, supra,* 501 F.Supp. 830, 836 (D. Hawaii

1980). Defendants' motion to dismiss this count is DENIED.

SUMMARY

On motions of defendants Wong and Lam, joined by defendants Smith, Newland, Clement, Ing, and Jolly, to dismiss under F.R.C.P. 12(b)(6), or, in the alternative, for summary judgment under F.R.C.P. 56, it is hereby

ORDERED that:

1. As to Count I of the Second Amended Class Action Complaint, defendants' motions to dismiss are GRANTED and the count is *Dismissed with prejudice* under F.R.C.P. 12(b)(6).

2. As to Count II, defendants' motions to dismiss are GRANTED and the claim under 15 U.S.C. section 77l (2) is *Dismissed with prejudice* as to those plaintiffs who did not invest on or after August 8, 1981; in all other respects the count is *Dismissed*, without prejudice, and with leave to amend, consistent with this decision, within 30 days after this court renders a decision on the summary judgment aspects of the motions presently before it.

3. As to Count III, defendants' motion to dismiss is GRANTED and it is *Dismissed*, without prejudice.

4. As to count IV, defendants' motion to dismiss is GRANTED and it is *Dismissed*, without prejudice.

5. As to Count V, defendants' motion to dismiss is GRANTED and it is *Dismissed* with prejudice.

6. As to Count VI, defendants' motion to dismiss is GRANTED and it is *Dismissed* without prejudice.

7. As to Count VII, defendants' motion to dismiss is DENIED.

8. As to Count VIII, defendants' motion to dismiss is GRANTED and it is *Dismissed with prejudice.*

9. As to Count IX, defendants' motion to dismiss is GRANTED and it is *Dismissed with prejudice.*

10. As to Count X, defendants' motion to dismiss is DENIED.

11. As to Count XI, defendants' motion to dismiss is GRANTED and it is *Dismissed with prejudice.*

12. As to Count XII, defendants' motions to dismiss are GRANTED and it is *Dismissed with prejudice.*

13. As to Count XIII, defendants' motion to dismiss is DENIED.

14. As to Count XIV, defendants' motion to dismiss is DENIED.

15. As to Count XVI, defendants' motions to dismiss are GRANTED and it is *Dismissed with prejudice* as to plaintiffs who did invest before August 8, 1982, and is *Dismissed without prejudice* as to all other plaintiffs investing on or after August 8, 1982.

16. As to Count XVII, the same orders of dismissal set out in Count XVI apply to Count XVII.

17. As to Count XVIII, defendants' motions to dismiss are GRANTED and it is *Dismissed with prejudice.*

18. As to Count XX, defendants' motion to dismiss is DENIED.

19. The Bishop Baldwin Rewald Dillingham & Wong Investors Association is *Dismissed with prejudice* as a plaintiff in this action *as to all counts.*

20. Decision on the summary judgment aspects of these motions will be heard and rendered in due course.

DATED: Honolulu, Hawaii, July 3, 1985.

Martin Pence
UNITED STATES DISTRICT JUDGE